Jason M. Rudd
Texas State Bar No. 24028786
jason.rudd@wickphillips.com
Catherine A. Curtis
Texas State Bar No. 24095708
catherine.curtis@wickphillips.com
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Phone: (214) 692-6200
Fax: (214) 692-6255

PROPOSED COUNSEL FOR DEBTOR

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 21-32112** |
| **HAWAIIAN VINTAGE CHOCOLATE** | § | |
| **COMPANY, INC.,** | § | **Chapter 11** |
| | § | |
| **DEBTOR.** | § | |

### DEBTOR'S MOTION TO OBTAIN POSTPETITION CREDIT

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT THE EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE ST., RM. 1254, DALLAS, TX 75242 BEFORE CLOSE OF BUSINESS ON DECEMBER 17, 2021, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

Hawaiian Vintage Chocolate Company, Inc. (the "Debtor"), debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Case"), files this *Motion to Obtain*

*Postpetition Credit* (the "Motion") seeking entry of an order substantially in the form attached hereto as **Exhibit A** (the "Financing Order"). Attached to the Financing Order is the proposed Superpriority Debtor-in-Possession Promissory Note (the "Promissory Note") describing the Debtor's proposed use of the funds as requested in this Motion. In support of the Motion, the Debtor respectfully states as follows:

## I. JURISDICTION AND VENUE

1.       This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (D), (G), (K), (M) and (O). Venue of this chapter 11 case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are Bankruptcy Code §§ 105, 361, 362, 363, 364, 503 and 507 and Bankruptcy Rules 4001, 9014 and 9019.

## II. RULE 4001 STATEMENT

2.       By this Motion, the Debtor seeks authority to enter into a postpetition financing arrangement (the "Credit Facility") with Allison Investment Corporation (the "Lender") as the lender. The Debtor seeks approval of the Credit Facility as funding for the Case as set forth in the Financing Order. In exchange for providing the Credit Facility, Lender will receive a claim against the Estate with priority under Section 364(c)(1) over administrative expenses under Sections 503(b) and 507(b). Further, as detailed below, the Lender has agreed to repayment of the Credit Facility with equity in the reorganized Debtor as detailed in the proposed promissory note and the Debtor's proposed plan of reorganization filed concurrently with this Motion.

3.       Pursuant to Bankruptcy Rule 4001(c), the following is a summary[1] of the relief the Debtor seeks by the Motion:

---

[1] The summaries contained in this Motion are qualified in their entirety by the provisions of the documents referenced including, without limitation, the Credit Facility and the Financing Order. To the extent anything in this Motion is

| | |
|---|---|
| **Commitment**<br>Rule 4001(c)(1)(B) | Advances from time to time to fund the Debtor's expenses, legal fees, and the administrative cost of the bankruptcy case. |
| **Conditions of Borrowing**<br>Rule 4001(c)(1)(B) | The Financing Order includes standard and customary conditions of borrowing.<br><br>*See* Financing Order ¶ 4. |
| **Interest Rates**<br>Rule 4001(c)(1)(B) | Per annum rate equal to 12%, and 16% in the occurrence of an Event of Default.<br><br>*See* Promissory Note ¶ 3. |
| **Maturity**<br>Rule 4001(c)(1)(B) | (i) February 28, 2022; (ii) an Event of Default as provided by the DIP Order; (iii) the Termination Date (as defined in the DIP Order); or (iv) the effective date of a chapter 11 plan of the Debtor.<br><br>*See* Promissory Note ¶ 5. |
| **Permitted Uses**<br>Rule 4001(c)(1)(B) | Fund the professional fees and other financing needs of the Debtor during the pendency of the Case, and pay certain fees, costs, and expenses of administration of the Case.<br><br>*See* Financing Order ¶ 5(b) |
| **Adequate Protection & Priority**<br>Rule 4001(c)(1)(B)(ii) | The Financing Obligations will be granted priority over administrative expenses under Section 364(c)(1) of the Bankruptcy Code, subject to the Carve-Out.<br><br>*See* Financing Order ¶ 7. |
| **Events of Default**<br>Rule 4001(c)(1)(B)(vi) | Events of Default, include<br><br>    a. **Payment Default**. The failure, refusal or neglect of Debtor to pay when due any part of the principal of, or interest on the Indebtedness owing to Lender by Debtor.<br>    b. **Credit Agreement**. (i) The Credit Agreement or Financing Order shall at any time after their execution and delivery and for any reason cease to be in full force and effect or shall be declared null and void, or (ii) the validity of enforceability the Credit Agreement shall be contested by the Debtor or the Debtor shall deny it has any further liability or obligation under the Credit Agreement or the Financing Order.<br>    c. **Other**. |

inconsistent with such documents, the terms of the applicable documents shall control. Capitalized terms used in this summary chart but not otherwise defined have the meanings ascribed to them in the Financing Order, as applicable.

|  | i. The Debtor's breach of any provision of the Credit Agreement or Financing Order;<br><br>ii. A default, violation, or breach of any term in any Order;<br><br>iii. Entry of an order granting a motion to convert the Case to a chapter 7 case;<br><br>iv. Entry of an order granting a motion to appoint a chapter 11 trustee or an examiner in the Case;<br><br>v. Entry of an order granting a motion to dismiss this case;<br><br>vi. Failure of the Bankruptcy Court to approve and enter a final Order approving the Credit Agreement, all terms of the set forth in this Order, and authorizing Debtor's and Lender's consummation of all acts contemplated in this Order on or before December 31, 2021;<br><br>vii. The Debtor's filing of an application, motion or other pleading seeking to amend, modify, supplement, or extend an Order approving the Loan without the prior written consent of Lender;<br><br>viii. Any reversal or modification without the express written consent of Lender of any order of the Bankruptcy Court affecting or relating to the Loan;<br><br>ix. The Debtor's filing of or the Court's confirmation of a chapter 11 plan of reorganization that is not acceptable to Lender;<br><br>x. The Debtor's filing of a motion seeking to grant or treat any other security interest, lien, claim, or encumbrance as pari passu with or senior to the claims of the Lender; and<br><br>xi. The Debtor's filing of a motion to obtain additional financing from a party other than the Lender that is not acceptable to Lender, in its sole and absolute discretion.<br><br>*See* Financing Order, ¶ 8. |
|---|---|
| **Carve-Out**<br>Rule 4001(c)(1)(B) | The Lender's administrative expense claim is subject and subordinate only to the Carve Out, for:<br><br>a) amounts payable to the United States Trustee; and<br>b) payment pursuant to orders of the Court of allowed unpaid professional fees, costs and expenses.<br><br>*See* Financing Order, ¶ 11. |
| **Automatic Stay**<br>Rule 4001(c)(1)(B)(iv) | Lender may file an affidavit (the "Affidavit") with the Bankruptcy Court certifying the occurrence of the Event of Default and seeking relief from the automatic stay to exercise any and all of its rights and remedies under the Credit Agreement or under applicable law. Lender shall, contemporaneously with the filing of such Affidavit with the |

|  | Bankruptcy Court, serve a copy of the Affidavit on the Debtor, counsel for the Debtor, and the U.S. Trustee via e-mail. If no party in interest files a response with the Bankruptcy Court, within fourteen (14) days of the filing of such Affidavit, the Bankruptcy Court may enter an order granting Lender relief from the automatic stay and permitting Lender to enforce its rights and remedies. In the event a timely response is filed, Lender shall be entitled to set a hearing on its motion for relief from the stay, subject to Court availability. *See* Financing Order, ¶ 9(b). |

## III. BACKGROUND

4.    The Debtor is a publicly traded company that produced and marketed gourmet cocoa and chocolate products manufactured from cocoa beans selected from a variety of locations around the world including beans grown by the Debtor in the State of Hawaii for both wholesale and retail sale to the public. In December of 1997, the Debtor went public with the trading of its common stock on the National Association of Securities Dealers OTC Bulletin Board, under the stock symbol "HWVI" to attract the public capital it needed to fund its business plan.

5.    Because drought conditions in Hawaii adversely effected the Debtor's cultivation activities and the relative infancy of the Debtor's planting program, the Debtor found it necessary to utilize more selected cocoa beans from third-party growers than planned. As a result, the Debtor grew only a portion of the cocoa beans used its chocolate products which increased costs and reduced acceptance and differentiation of the Debtor's products. By 2000, the capital the Debtor attracted proved inadequate to scale its needed agriculture efforts to correct these issues and compete with international conglomerates. By the early 2000's, the Debtor closed its offices in Hawaii and only had an internet presence. Eventually the Debtor could no longer support significant online marketing efforts becoming a non-operating OTC stock which has traded consistently until recently. With the advent of the new SEC ruling on non-reporting stocks being delisted, the stock will no longer have any value.

6.      With only specialized agricultural expertise and trademarks left as assets, the Debtor is seeking the relief of reorganization under chapter 11 of the Bankruptcy Code to maximize value to creditors and shareholders. The Debtor determined that a strategic merger with operating businesses that could capitalize on the Debtor's agricultural IP, cloning, field engineering techniques and independent grower systems presented the best option to generate superior long-term value for all stakeholders. Accordingly, the Debtor reached terms in the form of proposed mergers to combine their operations and distribute significant ownership to the Debtor's creditors and shareholders through a proposed prepackaged plan of reorganization.

7.      On November 30, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. No trustee or committee has been appointed in the Case.

8.      The Debtor continues to manage its property as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      On the Petition Date, the Debtor filed the Debtor's Prepackaged Chapter 11 Plan (ECF No. 6, the "Plan") and supporting disclosure statement. The Plan provides a recovery to the Debtor's creditors and equity holders through (i) distribution of shares in the Reorganized Debtor (as defined in the Plan) and the Reorganized Debtor's proposed newly formed subsidiary; and (ii) the proposed merger of the Reorganized Debtor with Azoth, Inc., and the new subsidiary with Inner State Health, Inc.

10.      The Debtor files this Motion to obtain financing to fund this Case and advance confirmation of the Plan.

## IV. RELIEF REQUESTED

11.     By this Motion, pursuant to Bankruptcy Code §§ 105, 361, 362, 363, 364, and 507 and Bankruptcy Rules 2002, 4001, and 9014, the Debtor requests that the Court enter the proposed final Financing Order attached as **Exhibit A** (the "Final Order") (i) authorizing the Debtor to enter into the Credit Facility (as defined below); and (ii) modifying the automatic stay to the extent necessary to implement and effectuate the terms and provisions of the Financing Order.

### A.     Need for financing

12.     The Debtor requires access to cash to fund the professional fees and administration of this Case. As detailed in the Plan, the Debtor anticipates entering a merger and issuing new common stock to provide for distribution to the Debtor's creditors and equity owners.

13.     The Debtor requires the infusion of additional cash into the Debtor's estate to effectuate the goals outlined above. The Debtor has determined that the terms the Lender is offering for postpetition financing pursuant to the terms of the proposed Credit Facility are the best available to the Debtor's estate. The Debtor has sought other proposals for financing and has determined that pursuing such financing alternatives is not in the best interest of the Estate.

### B.     The Credit Facility; Lender Connections

14.     By this Motion, the Debtor proposes to borrow up to $150,000 from the Lender, pursuant to the Promissory Note. The Promissory Note contemplates an initial draw of up to $75,000 and then allows for additional draws up to the principal balance.

15.     The Debtor proposes to use the financing from the Lender to fund the Debtor's goals outlined above and related professional fees through the reorganization process. Under the Credit Facility, Lender will be granted priority before administrative expense claims against the Estate pursuant to Section 364(c)(1) of the Bankruptcy Code, subject to the Carve Out (as defined

in the Financing Order, the "Carve Out"). The Debtor's agreement to the treatment of Lender's postpetition financing claims are referred to collectively herein as the "Financing Obligations".

16.     The Lender is a Delaware merchant bank established in 1998 and controlled by Kathy Burke and Buddy Young. The Lender's past dealings with Debtor include accounts receivable financing and bridge loans, from which Lender has a sizable pre-petition unsecured Claim against the Estate. The Debtor and the Lender engaged in arms' length negotiations with respect to the terms of the proposed Credit Facility.

17.     Furthermore, the Debtor lacks operations, cash flow or hard assets to provide the credit support, debt service and collateral required by third-party lenders. Importantly, the Lender has agreed to repayment of the Financing Obligations with common stock and warrants to be issued under the Plan. No other financing source would agree to be repaid in non-cash equity. Based upon the facts and circumstances of this bankruptcy case, as well as the Debtor's business judgment, the Debtor has determined that financing on the terms and conditions set forth herein and in the Financing Order is the most favorable available to the Estate under the circumstances. The Estate has an immediate need to obtain the Credit Facility to fund the reorganization process.

## V. BASIS FOR RELIEF AND ARGUMENT

### A.     Legal standards applicable to postpetition borrowing under Section 364

18.     Section 364 "imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Sav. & Loan Ass'n* (*In re Snowshoe Co.*), 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) ("It would be unrealistic and unnecessary to require a debtor to conduct such an exhaustive search for financing .... [I]t is clear that the debtor suffers some financial stress and has little or no unencumbered property."); *In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) ("Given the 'time is of the essence' nature of this type of

financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders.").

19.     Provided that a debtor's business judgment does not run afoul of the provisions of the Bankruptcy Code, courts grant debtors-in-possession considerable deference in acting in accordance therewith. *See, e.g., In re N. Bay Gen. Hosp., Inc.*, No. 08-20368 (Bankr. S.D. Tex. July 11, 2008) (order approving postpetition financing on an interim basis as exercise of debtors' business judgment); *Snowshoe*, 789 F.2d at 1088; *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("Cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); *see also In re Curlew Valley Assocs.*, 14 B.R. 506 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985).

20.     Specifically, to determine whether a debtor has met this business judgment standard, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of authority under the [Bankruptcy] Code").

21.     Further, in considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the borrower and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003);

*see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a borrower may have to enter into "hard bargains" to acquire funds for a reorganization).

22. The only possible way for Debtor to provide value to its creditors and shareholders is through a merger conducted in chapter 11 bankruptcy. The Debtor requires access to the Credit Facility to facilitate the merger and to be able to create value for the benefit of creditors.

**B.     The Debtor proposes to provide to Lender a claim with priority over administrative expenses of the estate**

23. As part of the Credit Facility, the Debtor proposes to provide to Lender a claim with priority over administrative claims, subject to the Carve Out, in an amount equal to the value of all funds advanced under the Credit Facility.

24. Having determined that financing is available only under Section 364(c)(1) of the Bankruptcy Code, the Debtor negotiated the Credit Facility with Lender at arms' length. Provided that a debtor-in-possession's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, a debtor-in-possession should be granted considerable deference in acting in accordance therewith. *See In re Futures Equity L.L.C.*, Case No. 00-33682-bjh–11, 2001 Bankr. LEXIS 2229, at *14 (Bankr. N.D. Tex. Apr. 11, 2001) (holding that a debtor seeking to obtain post-petition financing under Section 364 "has the burden of demonstrating: (i) the credit transaction is necessary to preserve the estate, and (ii) the terms of the transaction are fair and reasonable given the circumstances") (citations omitted); *see also In re Breechgrove Redevelopment, L.L.C.*, Case Nos. 07-12057, 07-12058, 2007 WL 4414777, at *1-2 (Bankr. E.D. La. Dec. 13, 2007) (holding that post-petition loan documents were fair and reasonable, reflecting exercise of prudent business judgment); *In re Premier Entm't Biloxi LLC*, Case No. 06- 50975, 2007 Bankr. LEXIS 3939, at *17 (Bankr. S.D. Miss. Feb. 2, 2007) (holding that, under Section

364, a borrower has the burden of proving "first, that the proposed financing is an exercise of sound and reasonable business judgment; second, that no alternative financing is available on any other basis; third, that the financing is in the best interests of the estate and its creditors; and, as a corollary to the first three points, that no better offers, bids, or timely proposals are before the Court.") (citation omitted).

25.     The Debtor requires access to the Credit Facility to preserve and maximize the value of estate assets. The terms and conditions of the Credit Facility are fair and reasonable and were negotiated by well-represented parties in good faith and at arms' length. As a result, the Debtor respectfully submits that the proposed Credit Facility is a proper exercise of its sound business judgment, is in the best interests of the estate, creditors, and equity interest holders, and that the financing on the terms provided in the Credit Facility should be approved in all respects.

## VI. THE AUTOMATIC STAY SHOULD BE MODIFIED ON A LIMITED BASIS

26.     The relief requested herein contemplates a modification of the automatic stay pursuant to Bankruptcy Code section 362 to provide the Lender with relief from the automatic stay in the event of a default under the Financing Order.

## VII. NOTICE AND WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

27.     Given the nature of the relief requested herein, the Debtor respectfully requests a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the fourteen-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable. This Motion has been provided to: (i) the Office of the United States Trustee for the Northern District of Texas; (ii) a list of the twenty largest unsecured creditors of the Estate; (iii) the Lender; and (iv) all parties in interest who have requested notice. The Debtor respectfully submit that no further notice of this Motion is required.

## VIII. RESERVATION OF RIGHTS

28.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim, lien or interest in or against the Debtor's estate, property of the Debtor's estate or any other third party; a waiver of the Debtor's or any other party's rights to dispute any claim, lien or interest; or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's or any third party's right to dispute such claim subsequently.

WHEREFORE, PREMISES CONSIDERED, the Debtor requests that the Court authorize the Debtor to enter into the proposed Credit Facility. The Debtor requests that this Court enter an Order, in substantially the form attached hereto, and granting such other and further relief as the Court may deem just and proper.

Dated: December 2, 2021

*/s/ Catherine A. Curtis*
Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
Catherine A. Curtis, Tex. Bar No. 24095708
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255
jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com
Catherine.curtis@wickphillips.com

**PROPOSED COUNSEL FOR DEBTOR**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 2, 2021, a true and correct copy of the forgoing was served on the parties listed in the attached service list, via ECF and/or email service where available, and otherwise via First Class United States Postal service.

*/s/ Catherine A. Curtis*
Catherine A. Curtis

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 21-32112** |
| **HAWAIIAN VINTAGE CHOCOLATE** | § | |
| **COMPANY, INC.,** | § | **Chapter 11** |
| | § | |
| **DEBTOR.** | § | |

## ORDER GRANTING DEBTOR'S MOTION TO OBTAIN POSTPETITION CREDIT

This matter came before the Court upon the motion (the "Motion"), dated December 2, 2021, filed by Hawaiian Vintage Chocolate Company, Inc. ("Debtor"), the chapter 11 debtor in the above-captioned chapter 11 case (the "Case"), pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting entry of a final order (this "Final Order"):

    i.      authorizing the Debtor to obtain post-petition financing on an administrative priority basis;

ii.        authorizing the Debtor to receive credit and funding from Allison Investment Corporation (the "Lender") under and pursuant to the terms of that certain Superpriority Debtor-in-Possession Promissory Note dated as of December [●], 2021 between the Debtor and Lender (together with this Final Order, the "Credit Agreement") (a copy of which is attached hereto as **Exhibit 1**), to provide for post-petition credit in conformity with the terms of the Credit Agreement (the "Credit Facility"), and to perform such other and further acts as may be required in connection with the Credit Agreement;

iii.        granting Lender's claims priority over administrative expense claims for all post-petition financing provided by Lender under the Credit Facility, payable from, and having recourse to, all of the pre-petition and post-petition property of the Debtor's estate, and all proceeds thereof, subject only to the Carve Out (defined herein) and the Professional Fee Escrow (defined herein);

iv.        a hearing (the "Final Hearing") on the final relief requested in the Motion having been held on submissions to or otherwise before the Court, appearances being noted on the record, the Debtor and Lender having agreed to the entry of this Final Order, all objections to the Final Order being resolved, overruled or withdrawn, and after due deliberation and consideration and sufficient cause appearing therefor:

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, THAT:

1.        Jurisdiction; Petition Date; Procedural Posture.

a)        This Court has jurisdiction to hear the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(D), (K), (M), and (O).

b)        On November 30, 2021 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

c)        No committee formed in this Case, and no chapter 11 trustee or examiner

was appointed in this Case.

2. <u>Disposition</u>. The Motion is hereby granted on a final basis on the terms set forth herein. Any objections to the Motion or to the relief sought in the Motion have been resolved, withdrawn or are hereby overruled on a final basis on the merits. This Final Order shall be valid, binding on all parties in interest and fully effective on a final basis upon entry by the Court.

3. <u>Notice</u>. The Final Hearing with respect to the Motion was held pursuant to the authorization of Bankruptcy Rule 4001(c)(2). Notice was served on the parties listed on the certificate of service filed in respect of the Motion.

4. <u>Findings Regarding the Credit Facility Based on the Record at the Final Hearing</u>.

a)    It is necessary for the Debtor to obtain post-petition financing for a period of time, and in an amount, which would allow the Debtor to continue to maintain and fund its estate, to pay professionals, and create value for its creditors. An immediate need exists for the Debtor to obtain credit from Lender. Without such funds, the Debtor will not be able to pay its administrative expenses, including professionals and the costs of this bankruptcy proceeding.

b)    Lender is willing to extend post-petition credit under the terms and conditions of this Final Order and the Credit Agreement. The Debtor is unable to obtain financing on terms more favorable than terms offered by Lender under the Credit Agreement.

c)    The terms of the credit advanced under this Final Order are fair and reasonable, were negotiated by the parties at arm's length and in good faith and are the best available to the Debtor under present market conditions and the Debtor's financial circumstances. Based on the foregoing, any credit extended under the Credit Agreement by Lender is extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

d)    The Debtor, to satisfy its need for post-petition financing, as determined in

the exercise of the Debtor's sound business judgment, desires the Court to enter this Final Order. Entry of this Final Order is necessary to prevent irreparable harm to the Debtor, including the harm that would result from the disruption of efforts to create value for Debtor's creditors and shareholders through proposed mergers including the Debtor's propose plan of reorganization, and will improve the prospects for a successful reorganization, and is in the best interest of the Estate and its stakeholders. Absent entry of this Final Order, the Debtor's estate will be immediately and irreparably harmed. Consummation of the Credit Facility is in the best interest of the Debtor's estate.

5.    <u>Authorization of the Credit Facility</u>.

a)    The Debtor is authorized to enter into the Credit Facility and to incur post-petition debt under the Credit Facility pursuant to the terms of the Credit Agreement and this Final Order. To the extent of any conflict between this Final Order and the Credit Agreement, this Final Order shall govern.

b)    In accordance with the terms of this Final Order, the Credit Facility shall be used to (i) fund the financing needs of the Estate during the pendency of the Case, and (ii) pay costs and expenses of the administration of the Case.

c)    Within three business days of the Court's entry of this Final Order, the Lender shall fund an initial draw of up to $75,000 to the Debtor by wire transfer or check drawn in U.S. Dollars pursuant to the written instructions provided by the Debtor and confirmed by the Debtor's counsel. Debtor may request additional draws up to the principal balance of $150,000, as needed thereafter.

d)    So long as no Event of Default (as defined herein) has occurred, the Debtor shall be authorized to use the borrowings under the Credit Facility.

e)      Any and all reasonable and necessary post-petition out of pocket fees and expenses paid or required to be paid to the Lender (the "DIP Lender Fees and Expenses") in its role as a post-petition lender under this Final Order in connection with the Credit Agreement shall be paid to Lender.

f)      In furtherance of the foregoing and without further approval of the Court, the Debtor is authorized and directed on a final basis to perform all acts, to make, execute and deliver all instruments and documents that may be required, necessary for the Debtor's performance under the Credit Agreement or this Final Order.

6.      Credit Facility Advances; Effective Date. Advances made under the Credit Facility from the date hereof until the Termination Date (defined herein) shall be governed by the terms and conditions of the Credit Agreement and this Final Order. The "Termination Date" shall mean the earliest of (i) the date on which the Debtor's plan of reorganization becomes effective, (ii) the conversion or dismissal of this Case, or (iii) the occurrence of an Event of Default (as such term is defined in this Final Order). The "Indebtedness" shall be the total amount of all DIP Draws (as that term is defined in the Credit Agreement), including post-petition interest. The "Effective Date" shall be the date upon which the Court enters this Final Order.

7.      Indebtedness. The Indebtedness shall be allowable as an administrative expense against the Debtor's bankruptcy estate pursuant to the provisions of § 364(c)(1) of the Code over all other administrative expenses of the kind specified in § 503(b) or § 507(b) of the Code and all other expenses and claims, subject only to the Carve Out.

8.      Events of Default. Each of the following shall constitute an "Event of Default" under this Agreement:

a.    **Payment Default**. The failure, refusal or neglect of Debtor to pay when due any

part of the principal of, or interest on the Indebtedness owing to Lender by Debtor.

b. **Credit Agreement**. (i) The Credit Agreement or this Order shall at any time after their execution and delivery and for any reason cease to be in full force and effect or shall be declared null and void, or (ii) the validity of enforceability the Credit Agreement shall be contested by the Debtor or the Debtor shall deny it has any further liability or obligation under the Credit Agreement or this Order.

c. **Other**.

   i.   The Debtor's breach of any provision of the Credit Agreement or this Order;

   ii.  A default, violation, or breach of any term in any Order;

   iii. Entry of an order granting a motion to convert the Case to a chapter 7 case;

   iv.  Entry of an order granting a motion to appoint a chapter 11 trustee or an examiner in the Case;

   v.   Entry of an order granting a motion to dismiss this case;

   vi.  Failure of the Bankruptcy Court to approve and enter a final Order approving the Credit Agreement, all terms of the set forth in this Order, and authorizing Debtor's and Lender's consummation of all acts contemplated in this Order on or before December 30, 2021;

   vii. The Debtor's filing of an application, motion or other pleading seeking to amend, modify, supplement, or extend an Order approving the Loan without the prior written consent of Lender;

   viii. Any reversal or modification without the express written consent of Lender of any order of the Bankruptcy Court affecting or relating to the Loan;

   ix.  The Debtor's filing of or the Court's confirmation of a chapter 11 plan of

reorganization that is not acceptable to Lender;

      x.  The Debtor's filing of a motion seeking to grant or treat any other security interest, lien, claim, or encumbrance as pari passu with or senior to the claims of the Lender; and

      xi.  The Debtor's filing of a motion to obtain additional financing from a party other than the Lender that is not acceptable to Lender, in its sole and absolute discretion.

9.    <u>Lender's Remedies</u>. Upon the occurrence of an Event of Default, unless otherwise waived by Lender in its sole and absolute discretion:

a)    Lender may refuse to make advances of funds or extend any further credit; and

b)    Lender may file an affidavit (the "<u>Affidavit</u>") with the Bankruptcy Court certifying the occurrence of the Event of Default and seeking relief from the automatic stay to exercise any and all of its rights and remedies under the Credit Agreement or under applicable law. Lender shall, contemporaneously with the filing of such Affidavit with the Bankruptcy Court, serve a copy of the Affidavit on the Debtor, counsel for the Debtor, and the U.S. Trustee via e-mail. If no party in interest files a response with the Bankruptcy Court, within fourteen (14) days of the filing of such Affidavit, the Bankruptcy Court may enter an order granting Lender relief from the automatic stay and permitting Lender to enforce its rights and remedies. In the event a timely response is filed, Lender shall be entitled to set a hearing on its motion for relief from the stay, subject to Court availability.

10.    <u>Successors and Assigns.</u> Except as otherwise stated herein, the provisions of this Final Order shall be binding upon all persons and entities and shall inure to the benefit of Lender, the Debtor, and their respective successors and assigns.

11.    <u>Carve Out for United States Trustee Fees and Professional Fees.</u> Subject to the

terms and conditions contained in this paragraph, all post-petition claims of Lender, including Lender's super-priority administrative expense claim, are subject and subordinate only to a carve out (the "Carve Out") for:

a) amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a) and any fees payable to the Clerk of the Bankruptcy Court (the "Statutory Fees");

b) the payment of allowed unpaid professional fees, costs and expenses (the "Professional Fees and Expenses") of attorneys, financial advisors and other professionals retained by the Debtor (together, the "Debtor Professionals"), only to the extent that such Professional Fees and Expenses were incurred or accrued prior to the earlier of (A) the date on which the Chapter 11 Plan becomes effective, or (B) the occurrence of an Event of Default; and

c) $15,000 for Professional Fees and Expenses of Debtor Professionals to be used to pay fees earned and expenses incurred subsequent to the occurrence of an Event of Default (the "Default Carve Out") or receipt by the Debtor of notice of an Event of Default. Nothing herein shall be construed as consent to the allowance of any fees and expenses of a retained professional or shall affect any party's rights to object to the allowance and payment of such fees and expense, all such rights being expressly preserved.

12. Stay; Modification. Having been found to be extending credit and making loans to the Debtor in good faith, the Lender shall be entitled to the full protection of § 364(e) with respect to the Credit Facility in the event that this Final Order, or any authorization contained herein is stayed, vacated, reversed or modified, including on appeal. No subsequent stay, modification, termination, failure to extend the term or vacation of this Final Order shall affect, limit or modify the validity, priority, or enforceability of any liability of the Debtor under the Credit Agreement. All credit extended under the Credit Agreement is made in reliance on this Final Order, and, except

as set forth below, the obligations the Debtor incurs to Lender under the Credit Agreement cannot lose § 364(c)(1) priority status, by any subsequent order in the Case or a converted chapter 7 case.

13.    <u>Preservation of Rights Under This Final Order</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) converting the Case to a chapter 7 case, (b) confirming or consummating any plan of reorganization of the Debtor, or (c) dismissing the Case or any subsequent chapter 7 case pursuant to sections 303, 305 or 1112 of the Bankruptcy Code, and the terms and provisions of this Final Order as well as the priorities in payment granted pursuant to this Final Order, the Credit Agreement shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment shall maintain their priority as provided by this Final Order until all Indebtedness is indefeasibly paid and satisfied.

14.    <u>Amendments and Modifications</u>. The Debtor and Lender may enter into any non-material amendments or modifications to the Credit Agreement without notice or a hearing or further order of this Court; provided, however, that any such modifications shall be filed with the Court and shall not be adverse to the Debtor or its Estate.

15.    <u>Final Order Governs</u>. Except as otherwise specifically provided in this Final Order, in the event of a conflict between the provisions of this Final Order, the Motion and the Credit Agreement, the provisions of this Final Order shall govern.

# # #

PREPARED AND SUBMITTED BY:

Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
Catherine A. Curtis, Tex. Bar No. 24095708
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255
jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com
Catherine.curtis@wickphillips.com

**PROPOSED COUNSEL FOR DEBTOR AND
DEBTOR-IN-POSSESSION**

# EXHIBIT 1

**Hawaiian Vintage Chocolate Company, Inc.**

**Superpriority Debtor-in-Possession Promissory Note**

Up to $150,000                                                                December [•], 2021

FOR VALUE RECEIVED, the undersigned, Hawaiian Vintage Chocolate Company, Inc. (the "Borrower"), promises to pay to the order of Allison Investment Corporation and its assigns and designees, (the "DIP Lender"), the principal sum of up to $150,000, with interest, subject to DIP Lender's agreement to accept class B shares of the reorganized Borrower as provided herein.

1. **Bankruptcy Court Approval**. The Borrower is a debtor and debtor-in-possession ("Debtor") in chapter 11 bankruptcy case under Case No. 21-32112 pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"). The Borrower's entry into this Superpriority Debtor-in-Possession Promissory Note (this "Note") and the financing contemplated hereunder shall not be effective until an order authorizing such financing has been entered in the Case (the "DIP Order"). The terms and conditions of the DIP Order are incorporated herein by reference in all respects. In the event of any inconsistency between the terms and conditions of this Note and the DIP Order, the provisions of the DIP Order shall govern and control.

2. **Loan Advances**. The Borrower may request advances under this Note in accordance with the DIP Order as follows:

        (a)        an initial draw (the "Initial DIP Draws") on or after the date of entry of the DIP Order on a final basis, of up to $75,000;

        (b)        such additional draws following entry of the DIP Order on a final basis not to exceed the total principal amount of $150,000 (the "Additional DIP Draws" and together with the Interim DIP Draws, collectively, the "DIP Draws" and each a "DIP Draw"), in an aggregate amount not to exceed the remaining principal balance of the Note.

3. **Interest Rate**; **Expenses**. The Borrower promises to pay interest on the outstanding principal amount of this Note at the lesser of (i) the rate of 12% per annum, accruing daily, or (ii) the Maximum Lawful Rate (as defined below) (the "Interest Rate"); provided that upon the occurrence and during the continuance of an Event of Default, the principal balance shall bear interest at the lesser of (i) the default rate of 16% per annum, accruing daily, or the (ii) Maximum Lawful Rate (the "Default Rate"). Interest on this Note shall accrue from December [●], 2021 (the "Interest Commencement Date") until repayment of the principal and payment of all accrued interest in full. Interest shall be computed based on a 360-day year and paid for the actual number of days elapsed for any whole or partial month in which interest is being calculated.

4. The Borrower shall pay all "DIP Lender Fees and Expenses" as defined by the DIP Order on the terms and conditions provided for in the DIP Order.

5. **Maturity Date; Payments**.

(a) Subject to the terms and conditions of the DIP Order in all respects, all principal and all accrued but unpaid interest on this Note and all accrued and unpaid DIP Lender Fees and Expenses will be due and payable on the earliest of (each, the "Maturity Date"): (i) February 28, 2022; (ii) an Event of Default as provided by the DIP Order; (iii) the Termination Date (as defined in the DIP Order) or (iv) the effective date of a chapter 11 plan of the Debtor.

(b) On the effective date of a chapter 11 plan of the Debtor, the DIP Lender agrees to accept equity in the reorganized Debtor as satisfaction in full of all principal, all accrued but unpaid interest on this Note and all accrued and unpaid DIP Lender Fees and Expenses as of the plan effective date, in the following amounts and classes.

| | Description | Amount |
|---|---|---|
| 1. | KIMO Class B Common Stock | 40,388 |
| 2. | KIMO Six Month Warrants | 8,000 |
| 3. | KIMO Twelve Month Warrants | 12,000 |
| 4. | KIMO Twenty-Four Month Warrants | 12,000 |
| 5. | ISH Class B Common Stock | 15,000 |
| 6. | ISH Six Month Warrants | 8,000 |
| 7. | ISH Twelve Month Warrants | 8,000 |
| 8. | ISH Twenty-Four Month Warrants | 8,000 |

(c) Notwithstanding the foregoing, this Note shall terminate and the principal and all accrued but unpaid interest on this Note and all accrued and unpaid DIP Lender Fees and Expenses shall be due and payable upon the occurrence of an Event of Default (as defined below) or a Termination Date (as defined below), subject to the terms and conditions of the DIP Order in all respects.

6. **Super-Priority Claim**. The Borrower's obligations to repay all amounts due under this Note and the DIP Order shall be allowable as an administrative expense against the Debtor's bankruptcy estate pursuant to the provisions of § 364(c)(1) of the Bankruptcy Code over all other administrative expenses of the kind specified in § 503(b) or § 507(b) of the Bankruptcy Code and all other expenses and claims, subject only to the Carve Out, as and to the extent provided for in the DIP Order.

7. **Amendment**. Amendments and modifications of this Note may be made only by the mutual written consent of the Borrower and the DIP Lender, provided that no material amendment or modification may conflict with a provision of the DIP Order unless approved by the Bankruptcy Court.

8. **Defaults and Remedies**.

(a) Events of Default. An "Event of Default" and "Termination Date" shall have the meaning provided in the DIP Order.

(b) Remedies. SUBJECT TO THE TERMS AND CONDITIONS OF THE DIP ORDER IN ALL RESPECTS, UPON AN EVENT OF DEFAULT OR TERMINATION

2

DATE, AT ANY TIME THEREAFTER, THE DIP LENDER MAY DECLARE ALL OBLIGATIONS UNDER THIS NOTE AND THE DIP ORDER IMMEDIATELY DUE AND PAYABLE AND SHALL HAVE THE REMEDIES PROVIDED IN THE DIP ORDER AND ALL OTHER APPLICABLE LAW.

(c)     In case of any default under this Note, but subject to the terms and conditions of the DIP Order in all respects, the Borrower shall pay to the DIP Lender, on demand, all costs and expenses incurred by DIP Lender in connection with enforcement of this Note or as a result of such default, including reasonable attorneys' fees and court costs.

9. **Remedies Cumulative**.  No remedy conferred upon the DIP Lender in this Note or the DIP Order is intended to be exclusive of any other remedy and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise.  To the extent permitted by applicable law, the Borrower and the DIP Lender severally waive presentment for payment, demand, protest and notice of dishonor.

10. **Remedies Not Waived**.  No course of dealing between the Borrower and the DIP Lender or any delay on the part of the DIP Lender in exercising any rights hereunder shall operate as a waiver of any right.

11. **Transfer**.  The term "DIP Lender" as used herein shall also include any transferee of this Note.

12. **Covenants Bind Successors and Assigns**.  All the covenants, stipulations, promises and agreements in this Note contained by or on behalf of the Borrower shall bind their successors and assigns, whether so expressed or not, including as provided by the DIP Order.

13. **Payments**.  All payments of principal of and interest on this Note shall be paid in United States Dollars by wire transfer of immediately available funds to an account designated by the DIP Lender.

14. **Maximum Lawful Rate**.  It is the intent of the Borrower and the DIP Lender to conform to and contract in strict compliance with applicable usury law from time to time in effect. In no way, nor in any event or contingency (including but not limited to prepayment, default, demand for payment, or acceleration of the maturity of any obligation), shall the rate of interest taken, reserved, contracted for, charged or received under this Note exceed the highest lawful interest rate permitted under applicable law (the "Maximum Lawful Rate").  If the DIP Lender shall ever receive anything of value which is characterized as interest under applicable law and which would apart from this provision be in excess of the highest lawful interest rate permitted under applicable law, an amount equal to the amount which would have been excessive interest shall, without penalty, be applied to the reduction of the principal amount owing on the Note in the inverse order of its maturity and not to the payment of interest, or refunded to the Borrower or the other payor thereof if and to the extent such amount which would have been excessive exceeds such unpaid principal.  All interest paid or agreed to be paid to the DIP Lender hereof shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full stated term (including any renewal or extension) of the Note so that the amount of interest on

3

account of such obligation does not exceed the maximum permitted by applicable law. As used in this Section, the term "applicable law" shall mean the laws of the State of Texas or the federal laws of the United States, whichever laws allow the greater interest, as such laws now exist or may be changed or amended or come into effect in the future.

15. **Governing Law**. THIS NOTE SHALL BE GOVERNED BY, CONSTRUED IN ACCORDANCE WITH, AND ENFORCED UNDER, THE LAWS OF THE STATE OF TEXAS APPLICABLE TO AGREEMENTS OR INSTRUMENTS ENTERED INTO AND PERFORMED ENTIRELY WITHIN SUCH STATE.

16. **Waiver of Jury Trial**. NEITHER THE BORROWER, NOR ANY ASSIGNEE, SUCCESSOR, HEIR NOR PERSONAL REPRESENTATIVE OF THE COMPANY SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY OTHER LITIGATION PROCEDURE BASED UPON OR ARISING OUT OF THIS NOTE OR THE DEALINGS DESCRIBED HEREIN OR THE RELATIONSHIP BETWEEN THE PARTIES. THE COMPANY SHALL NOT SEEK TO CONSOLIDATE ANY SUCH ACTION, IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT OR HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS SECTION HAVE BEEN FULLY DISCUSSED BY THE PARTIES HERETO, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NO PARTY HERETO HAS IN ANY WAY AGREED WITH OR REPRESENTED TO ANY OTHER PARTY HERETO THAT THE PROVISIONS OF THIS SECTION WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

17. **Severability**. If any provision of this Note, or the application of such provision to any person or circumstance, shall be held invalid under the applicable law of any jurisdiction, then the remainder of this Note or the application of such provision to other persons or circumstances or in other jurisdictions shall not be affected thereby. In addition, if any provision of this Note is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform to such law. Any provision hereof that may prove invalid or unenforceable under any law shall not affect the validity or enforceability of any other provision hereof.

18. **Headings**. The headings in this Note are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

19. **Entire Agreement**. This Note, including the DIP Order by reference, contains the entire agreement between the parties hereto relating to the subject matter hereof and thereof and all prior agreements relative hereto and thereto which are not contained herein or therein are terminated.

[Signature page follows.]

4

IN WITNESS WHEREOF, the Borrower have executed this Note to be effective as of the date first written above.

Hawaiian Vintage Chocolate Company, Inc.

By: _____

Name: _____

Title: _____