

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 22, 2021**

_Harlin De Wayne Hale_
United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 21-32112** |
| **HAWAIIAN VINTAGE CHOCOLATE** | § | |
| **COMPANY, INC.,** | § | **Chapter 11** |
| | § | |
| **DEBTOR.** | § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DISCLOSURE STATEMENT ON FINAL BASIS AND (II) CONFIRMING DEBTOR'S PREPACKAGED CHAPTER 11 PLAN
*Relates to ECF Nos. 5 and 6*

Debtor Hawaiian Vintage Chocolate Company, Inc. ("Debtor") having:

    a.   commenced on November 30, 2021 (the "Petition Date"), this Chapter 11 Case by

filing a voluntary petition for relief under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code");

    b.   commenced solicitation and distributed, on or after November 22, 2021 of: (i) its

Prepackaged Chapter 11 Plan [ECF No. 6] (as modified, amended or supplemented

from time to time, the "<u>Plan</u>") attached hereto as **<u>Exhibit A</u>**, (ii) Debtor's Disclosure Statement for Debtor's Prepackaged Chapter 11 Plan [ECF No. 5] (as modified, amended or supplemented from time to time, the "<u>Disclosure Statement</u>"), and (iii) ballots for voting on the Plan to holders of Claims in Classes 3, 4, and 5, in accordance with the terms of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "<u>Local Rules</u>");

c.  filed, on the Petition Date:

    a.  the Plan and Disclosure Statement; and

    b.  the Debtor's Emergency Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Approving the Solicitation Procedures and Dates, Deadlines and Notices Related Thereto, (III) Directing that a Meeting of Creditors not be Convened, (IV) Waiving the Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities, and (V) Granting Related Relief [ECF No. 9] (the "<u>Scheduling Motion</u>").

d.  obtained, on December 3, 2021, an Order granting the Scheduling Motion [ECF No. 23] (the "<u>Scheduling Order</u>");

e.  served, on or about December 2, 2021, in accordance with the Scheduling Order, and as evidenced by that certain Certificate of Service filed at ECF No. 29 (the "<u>Confirmation Service Affidavit</u>"), among other things, the Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Case, (II) Combined

Hearing on the Disclosure Statement, Confirmation of the Prepackaged Chapter 11 Plan, and Related Matters, and (III) Related Objection and Briefing Deadlines [ECF No. 75] (the "Combined Notice") on all known parties in interest, which informed recipients of (i) the commencement of these Chapter 11 Case, (ii) the date scheduled for the combined hearing to consider approval of the Disclosure Statement and confirmation of the Plan on December 22, 2021 (the "Combined Hearing"), (iii) key dates and information regarding approval of the Disclosure Statement and confirmation of the Plan and the Objection Deadline, and (iv) the methods by which parties may request copies of the Plan and Disclosure Statement;

f.   filed, on December 14, 2021, the Notice of Filing of Plan Supplement [ECF No. 35] (the "Plan Supplement");

g.   filed, on December 17, 2021, the Declaration of Catherine A. Curtis regarding Solicitation of Votes and Tabulation of Ballots Case on Debtor's Prepackaged Chapter 11 Plan [ECF No. 39] (the "Tabulation Declaration") which accounts for the ballots received both before and after the Petition Date;

h.   filed on December 20, 2021, the Declarations of (1) James Walsh, (2) Ashley Kvamme, and (3) Thomas Smith in Support of Final Approval of the Disclosure Statement and Confirmation of Debtor's Prepackaged Chapter 11 Plan [ECF Nos. 42, 43 and 45] (respectively, the "Walsh Declaration", the "Kvamme Declaration", and the "Smith Declaration" and together, the "Declarations"); and

i.   filed on December 20, 2021, the Debtor's Response in Support of Final Approval of the Disclosure Statement and Confirmation of the Plan [ECF No. 44] (the "Response in Support").

This Court having:

a.  entered the Scheduling Order on December 3, 2021;

b.  reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Tabulation Declaration, the Declarations, the Response in Support and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including the United States Trustee's Objection to 1) Disclosure Statement for Debtor's Prepackaged Chapter 11 Plan and 2) Debtor's Prepackaged Chapter 11 Plan [ECF Nos. 36 and 37] (the "Trustee Objection");

c.  held the Combined Hearing;

d.  heard the statements and arguments made by counsel with respect to Confirmation;

e.  considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings, and other evidence presented at the Combined Hearing;

f.  entered rulings on the record at the Combined Hearing (the "Confirmation Rulings"); and

g.  taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and on the record of the Chapter 11 Case and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Combined Hearing including, without limitation, the Declarations; and after due deliberation and good cause appearing therefor, the Court hereby

**FINDS, DETERMINES, AND CONCLUDES AS FOLLOWS:**

A.      <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and on the record at the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

## JURISDICTION AND VENUE

B.      <u>Jurisdiction, Venue, Core Proceeding</u>. This Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has jurisdiction to enter a final order with respect thereto. The Debtor is an eligible debtor under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## CHAPTER 11 CASE

C.      <u>Commencement of the Chapter 11 Case</u>.    On the Petition Date, the Debtor initiated this Chapter 11 Case by filing a voluntary chapter 11 petition in the Court.

D.      The Debtor remains in possession of its Estate.

E.      <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court and pleadings reflected therein including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Case.

F.      <u>Plan Supplement</u>. On December 14, 2021, Debtor filed its Plan Supplement which incorporated the Azoth Merger Agreement contemplated under the Plan into the Plan. The Plan

Supplement provided timely and adequate notice of proposed Azoth Merger Agreement under the Plan. No other or further notice is or will be required with respect to the Plan Supplement. The document included in the Plan Supplement is integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, the Debtor reserves the right to alter, amend, update, or modify the Plan Supplement before the Effective Date, subject to compliance with the Bankruptcy Code and the Bankruptcy Rules; provided that no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Confirmation Order or the Plan.

G. <u>Modifications to the Plan</u>. Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan since the commencement of solicitation described or set forth herein constitute (i) technical changes or changes with respect to particular Claims or Interests made pursuant to the agreement of the Holders of such Claims or Interests and/or otherwise (ii) do not materially and adversely affect the treatment of any Claims or Interests. Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

H. This Confirmation Order contains modifications to the Plan that were made to address certain objections and informal comments received from parties in interest, including the Trustee Objection. Modifications to the Plan since entry of the Scheduling Order, if any, are consistent with the provisions of the Bankruptcy Code. The Plan, as modified, shall constitute the Plan submitted for Confirmation.

I. <u>Adequacy of the Disclosure Statement</u>. The Disclosure Statement contains "adequate information" (as such term is defined in Bankruptcy Code § 1125(a) and used in

Bankruptcy Code § 1126(b)(2)) with respect to the Debtor, the Plan, and the transactions contemplated therein. To the extent not withdrawn, settled, or otherwise resolved, any objections to the approval of the Disclosure Statement, including the Trustee Objection, are overruled.

## SOLICITATION AND NOTICE

J. As evidenced by the Confirmation Service Affidavit and the Tabulation Declaration, the Debtor provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Scheduling Order, the Combined Notice, the Plan Supplement, and all the other materials that the Debtor distributed in connection with the Confirmation of the Plan are in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Local Rules, and the procedures set forth in the Scheduling Order. The Debtor provided due, adequate, and sufficient notice of the Plan Objection Deadline and the Combined Hearing (as may be continued from time to time), and any applicable bar dates and hearings described in the Scheduling Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Scheduling Order. No other or further notice is or shall be required.

K. The Plan, the Disclosure Statement, Plan Supplement and the other materials distributed by the Debtor in connection with solicitation of the Plan were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, with the Local Rules, and with the procedures set forth in the Scheduling Order.

L. The Debtor solicited votes for acceptance and rejection of the Plan in good faith and provided the opportunity for creditors to objection to the releases set forth in the Plan. Such solicitation and notice complied with sections 1125 and 1126 and all other applicable sections of the Bankruptcy Code, rules 3017, 3018, and 3019 of the Bankruptcy Rules, the Scheduling Order, the Local Rules, and all other applicable rules, laws, and regulations.

M. <u>Voting</u>. Before the Combined Hearing, the Debtor filed the Tabulation Declaration. The Tabulation Declaration was admitted into evidence during the Combined Hearing. The procedures used to tabulate ballots were fair and conducted in accordance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

N. As set forth in the Plan, only Holders of Claims in Classes 3, 4, and 5 were eligible to vote on the Plan. Holders of Claims in Class 2 were also entitled to vote on the Plan, but there were none in which to solicit votes. Holders of Claims in Class 1 are Unimpaired and conclusively deemed to accept the Plan and, therefore, did not vote to accept or reject the Plan. As evidenced by the Tabulation Declaration, Classes 3, 4, and 5 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

O. <u>Bankruptcy Rule 3016(a)</u>. The Plan is dated and identifies the Debtor as the Plan proponent, thereby satisfying Bankruptcy Rule 3016(a).

## COMPLIANCE WITH THE REQUIREMENTS OF <u>SECTION 1129 OF THE BANKRUPTCY CODE</u>

P. <u>Burden of Proof</u>. The Debtor has met the burden of proving the elements of sections 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.

Q. <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i) <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. As required by section 1123(a)(1) of the Bankruptcy Code, in addition to Administrative Expense Claims and Priority Tax Claims, which need not be classified, Article III of the Plan designate five (5) Classes

of Claims against and Interests in the Debtor. As required by section 1122(a) of the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not effect unfair discrimination between holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)      Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Articles III and IV of the Plan specify that Class 1 is unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)      Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Articles III and IV of the Plan specify that Classes 2, 3, 4, and 5 are impaired and set forth the treatment of such impaired Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)      No Discrimination (11 U.S.C. § 1123(a)(4)). Article IV of the Plan provides for the same treatment under the Plan for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment in respect of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)      Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan provides for adequate and proper means for its implementation including, without limitation, effectuating the Azoth Merger Agreement, vesting the Debtor's property in the Reorganized Debtor, creating a new subsidiary of the Reorganized Debtor, and the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents related to the foregoing, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(vi) <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. The applicable New Organizational Documents have been or will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity securities to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(vii) <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. The applicable New Organizational Documents shall contain provisions with respect to the selection of directors and officers of the Reorganized Debtor that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

R. <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

(i) <u>Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1))</u>. Pursuant to the Plan, Class 1 is unimpaired and Classes 2, 3, 4, and 5 are impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(ii) <u>Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))</u>. Article IX of the Plan provides for the rejection of the Debtor's remaining executory contracts and unexpired leases (if any) as of the Effective Date, except for any executory contract or unexpired lease that (a) was previously assumed, assumed and assigned or rejected pursuant to an Order of the Bankruptcy Court entered on or before the Confirmation Date, (b) is expressly assumed under the Plan, (c) previously expired or terminated by its own terms or (d) is the subject of a motion to assume, assume and assign or reject filed on or prior to the Confirmation Date.

(iii)     Settlement of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)). Article VI of the Plan provides for settlement of certain Claims and Causes of Action. As set forth below, the proposed Plan settlements are approved as fair and equitable.

(iv)     Modification of the Rights of Holders of Claims (11 U.S.C. § 1123(b)(5)). Article IV of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of each class of Claims and Interests.

(v)     Other Appropriate Provisions (11 U.S.C. § 1123(b)(6)). The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code including, without limitation, provisions for (a) distributions to holders of Claims and Interests, (b) resolution of Disputed Claims and Disputed Interests, (c) allowance of certain Claims and Interests, (d) releases by the Estate and certain parties of certain other parties as revised by this Confirmation Order, and (e) exculpations of certain parties as revised by this Confirmation Order.

S.     Cure of Defaults (11 U.S.C. § 1123(d)). Debtor does not have any default claims associated with an executory contract or unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. Thus, section 1123(d) of the Bankruptcy Code is not applicable to the Plan.

T.     Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of this Court in transmitting the Plan, the Disclosure Statement, the Ballots and related documents and notices and in soliciting and tabulating the votes on the Plan. The Debtor is a proper debtor under section 109 of the Bankruptcy Code.

U.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3)

of the Bankruptcy Code. The Debtor's good faith is evident from the facts and record of the Chapter 11 Case, the Disclosure Statement, the record made at the Confirmation Hearing and the other proceedings in the Chapter 11 Case. This Order, the Plan, the Plan Supplement, and the Motion for Postpetition Credit were (1) proposed with the legitimate and honest purpose of maximizing the value of the Estate and (2) extensively negotiated at arm's length between the Debtor and various important stakeholders in the Chapter 11 Case, including, with respect to one or more of the foregoing orders, agreements, and documents. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions (as modified by this Confirmation Order) have been negotiated in good faith and at arm's-length. Such provisions are consistent with sections 105, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, are each necessary for the success of the Plan, and were not included in the Plan for any improper purpose.

V.     <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment to be made by the Estate, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, is subject to the approval of the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

W.     <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code. The Debtor has disclosed that the initial Reorganized Board shall consist of the following six directors: (1) James Walsh, Chairman of the Board and CEO, (2) Tom Smith, (3) Ashley Kvamme, (4) Ed Parker, (5) Bruce Culver, and (6) Josh Kornoff. James Walsh is an Insider of the Debtor that will serve on the Reorganized Board and as the CEO of the Reorganized Debtor and will have a salary of $1.00. As of the Effective Date, the initial board of directors for ISH shall consist of the following two directors: (1) Ashley

Kvamme, as CEO, and (2) Bruce Culver. Their appointments are consistent with the interests of holders of Claims and Interests and with public policy. The Debtor has further disclosed that it intends to undergo certain restructuring transactions after the Effective Date in connection with the New Organizational Documents.

X.      No Rate Changes (11 U.S.C. § 1129(a)(6)). Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Plan.

Y.      Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Disclosure Statement, the Plan, and the Declarations, and the other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an impaired Claim or Interest that has not accepted the Plan will on account of such Claim receive or retain property under the Plan having a value, as of the Effective Date, that is at least equal to the amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

Z.      Acceptance by/Unimpairment of Certain Classes (11 U.S.C. § 1129(a)(8)). Classes 2, 3, 4, and 5 are impaired by the Plan and were entitled to vote to accept or reject the Plan. Class 1 and holders of Claims in such Class, if any, are deemed to have accepted the Plan.

AA.     Treatment of Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9)).   The treatment of Administrative Expense Claims and Priority Tax Claims and Priority Non-Tax Claims pursuant to Articles II and IV of the Plan satisfies the requirements of sections 1129(a)(9)(A) of the Bankruptcy Code.

BB.     Acceptance By At Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)). As described above and in the Tabulation Agent Declaration, Classes 3, 4, and 5 are impaired and

voted to accept the Plan. Class 4 voted to accept the Plan even without including any acceptance of the plan by any insider. Section 1129(a)(10) is, therefore, satisfied.

CC. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Disclosure Statement, the Plan, the Plan Supplement, the Declarations and the other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

DD. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. All fees due and payable pursuant to section 1930 of title 28, United States Code, as determined by the Court in the event of a dispute, have been or will be paid by the Debtor and the Reorganized Debtor pursuant to section 2.3 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

EE. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. The Debtor is not responsible for the payment of any "retiree benefits," as defined in section 1114 of the Bankruptcy Code. Section 1129(a)(13) of the Bankruptcy Code is thus inapplicable in these Chapter 11 Cases.

FF. <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>. The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

GG. <u>Debtor Not Individual (11 U.S.C. § 1129(a)(15))</u>. The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Debtor.

HH.     <u>No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. §</u> <u>1129(a)(16))</u>. The Debtor is not a non-profit corporation or trust. Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

II.     <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b))</u>. The Plan does not discriminate unfairly and is fair and equitable with respect to all the Classes as required by sections 1129(b)(2) of the Bankruptcy Code.

JJ.     <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan subject to confirmation. Section 1129(c) of the Bankruptcy Code is satisfied.

KK.     <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

LL.     <u>Not Small Business Cases (11 U.S.C. § 1129(e))</u>. The Chapter 11 Case is not a small business case and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

### <u>COMPLIANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE</u>

MM.     <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Court in the Chapter 11 Case and the Tabulation Agent Declaration, the Exculpated Parties, and all other persons involved in the solicitation process, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities arising out of, relating to or connected with the administration of the Chapter 11 Case, the negotiation and pursuit of approval of the Disclosure Statement, the preparation and solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the

Plan, the consummation of the Plan, the administration of the Plan and the property to be distributed under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

## **COMPLIANCE WITH SECTION 1126 OF THE BANKRUPTCY CODE**

NN.     <u>Acceptance of Plan (11 U.S.C. § 1126)</u>. As set forth in the Tabulation Agent Declaration, Classes 2, 3, 4, and 5 are impaired by the Plan. There were no known holders of a Class 2 of which to solicit a vote on the Plan.  Classes 3, 4, and 5 voted to accept the Plan. The requirements of section 1126 of the Bankruptcy Code are satisfied.

## **PLAN IMPLEMENTATION**

OO.     The terms of the Plan are incorporated by reference and are, except as modified herein or in any future order of the Court contemplated by this Confirmation Order, proper in all respects, and constitute an integral part of this Confirmation Order.

PP.     The Plan has been negotiated in good faith and at arm's-length. On and after the Effective Date, the terms of the Plan shall constitute legal, valid, and binding obligations, and the Plan will be fully enforceable in accordance with its terms.

QQ.     Pursuant to section 1142(a) of the Bankruptcy Code, except as modified herein or in any future order of the Bankruptcy Court contemplated by this Confirmation Order, the Plan will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. The Debtor, the Estate, and all of their respective members, managers, officers, directors, agents, advisors, attorneys, employees, equity holders, partners, affiliates, funds, agents and representatives will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, transfers and documentation contemplated thereby and (ii) take any actions authorized and directed by this Confirmation Order.

RR.     The settlements described in Article VI of the Plan are necessary to and are an integral and essential element of the Plan and its consummation. The terms and conditions of the settlements in Article VI of the Plan are fair and reasonable under the circumstances. The settlements in Article VI of the Plan are the product of arm's-length negotiations and have been proposed in good faith, for legitimate business purposes, are supported by reasonably equivalent value and fair consideration and reflect the Debtor's exercise of reasonable business judgment.

SS.     <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

## <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

TT.     The Debtor has exercised sound business judgment in determining whether to assume or reject executory contracts and unexpired leases pursuant to Article IX of the Plan. Each assumption or rejection of an executory contract or unexpired lease as provided in section 9.1 of the Plan shall be legal, valid, and binding upon the Debtor and all non-Debtor counterparties to such contracts or leases, and satisfies the requirements of section 365 of the Bankruptcy Code including, without limitation, section 365(d)(4).

## EXCULPATIONS, INJUNCTIONS AND RELEASES

UU.    The Court has jurisdiction under 28 U.S.C. §§ 1334(a) and (b) to approve the exculpation, injunctions, stays and releases set forth in the Plan. Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the releases and injunctions set forth in the Plan because, as has been established on the record in the Chapter 11 Case and the evidence presented at the Confirmation Hearing, such provisions (i) are integral to the Plan and essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Estate, (iii) are fair, equitable and reasonable, and (iv) are in the best interests of the Debtor, the Estate, and parties in interest. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunctions set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtor and the Estate, creditors and equity holders. Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such releases. The record of the Confirmation Hearing and the Chapter 11 Case is sufficient to support the releases, exculpation, and injunctions provided for in the Plan. Accordingly, based upon the record in the Chapter 11 Case, the representations of the parties, and/or the evidence proffered, adduced, and presented at the Confirmation Hearing, this Court finds that the injunctions, exculpation, and releases set forth in the Plan are consistent with the Bankruptcy Code and applicable law.

## THE PLAN SATISFIES CONFIRMATION REQUIREMENTS

VV.    All parties have had a full and fair opportunity to file objections to confirmation of the Plan and to litigate any such objections. The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and shall be confirmed.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      <u>Confirmation</u>. The Plan, as modified by this Confirmation Order, shall be, and hereby is, confirmed pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan, all exhibits and schedules thereto and the Plan Supplements are incorporated by reference into and are an integral part of the Plan and this Order.

2.      <u>Plan Supplement and Exhibits and Schedules to the Plan</u>. The documents contained in the Plan Supplement, the exhibits and schedules to the Plan, and any other Plan documents, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtor at the Confirmation Hearing, and the execution, delivery, and performance thereof by the Debtor, are authorized and approved.

3.      <u>Solicitation and Notice</u>. Notice of the Confirmation Hearing and the solicitation of votes on the Plan complied with the terms of the Scheduling Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. No re-solicitation of votes was required as a result of Plan modifications and amendments.

4.      <u>Objections</u>. All objections to the Plan not otherwise withdrawn or resolved at or prior to the Confirmation Hearing, including the Trustee Objection, are overruled for the reasons articulated by the Court on the record at the Confirmation Hearing.

5.      <u>Binding Effect</u>. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against or Interest in the Debtor and such holder's respective successors and assigns, whether or not such Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

6. <u>Plan Classification Controlling</u>. The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots submitted in connection with voting on the Plan: (a) were solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes; and (c) shall not be binding on the Estate for any purpose other than voting on the Plan.

7. <u>Distribution Under the Plan</u>. All distributions under the Plan shall be made in accordance with Article VII of the Plan.

8. <u>Vesting of Assets (11 U.S.C. § 1141(b), (c))</u>. As set forth in section 6.8 of the Plan, as of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Estate's assets shall be conveyed and assigned to the Reorganized Debtor.

9. <u>Exemption from Registration</u>.

a. The New Common Stock is or may be "securities," as defined in Section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws.

b. All shares of the New Common Stock, including the KIMO Class A Common Stock, the KIMO Class B Common Stock, the KIMO Warrants, the ISH Class A Common Stock, the ISH Class B Common Stock and the ISH Warrants, issued or authorized pursuant to the Plan are issued in reliance upon and pursuant to section 1145 of the Bankruptcy Code. Pursuant to section 1145 of the Bankruptcy Code, the issuance of (1) the New Common Stock, and (2) any other securities issued in reliance on and to the maximum extent provided by section 1145 of the Bankruptcy Code are exempt from, among other things, the registration

requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration before the offering, issuance, distribution, or sale of such securities. Each of the foregoing securities (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and (b) is freely tradable and transferable by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" of the Reorganized Debtor as defined in Rule 144(a)(1) under the Securities Act and has not been such an "affiliate" within 90 days of such transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

c.     After the Effective Date, the Reorganized Debtor will take all appropriate steps to fully comply with 17 C.F.R. § 240.15c2-11 and all related securities regulations.

10.     <u>Notice of Confirmation Date and Effective Date</u>.

a.     <u>Notice of Entry of Confirmation Order and Effective –Date</u>. Within five (5) Business Days after the Effective Date, the Reorganized Debtor shall file on the docket and mail to all parties in interest in the Chapter 11 Case notice of (i) the entry of this Confirmation Order and (ii) the last date to file (A) requests for payment of Administrative Expense Claims pursuant to section 2.1 of the Plan, and (B) Claims arising from the rejection of any executory contracts and unexpired leases pursuant to section 9.1 of the Plan.

11.     <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.

a.     <u>General</u>. Pursuant to section 9.1 of the Plan, except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the Debtor is hereby deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned, or rejected by the Debtor pursuant to an order of the

Court, (ii) is expressly assumed under the Plan, (iii) previously expired or terminated pursuant to its own terms, or (iv) is the subject of a motion to assume, assume and assign, or reject filed on or before the Confirmation Date. This Confirmation Order shall constitute approval, pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code, of the assumption or rejection of executory contracts and unexpired leases as described above upon the occurrence of the Effective Date. Such assumption or rejection shall be legal, valid, and binding upon the Debtor and all non-Debtor counterparties to such contracts or leases, and satisfies the requirements of section 365 of the Bankruptcy Code including, without limitation, section 365(d)(4).

      b.    <u>Bar Date for Rejection Claims</u>. All Rejection Claims arising out of the rejection of executory contracts or unexpired leases pursuant to the Plan must be filed with the Court and served upon counsel to the Debtor or Reorganized Debtor no later than thirty (30) days after the earlier of (i) the date of entry of a Court order (including this Confirmation Order) approving such rejection or (ii) the Effective Date. Any Rejection Claims not filed within such time shall be forever barred from assertion against the Debtor, the Reorganized Debtor, or the Estate.

      12.    <u>General Authorization</u>. Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the structure of the Debtor, and any action required by or in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by any person or entity.

      13.    <u>Plan Settlements</u>. The settlements contained in the Plan are hereby approved. The parties to each settlement are authorized and directed to take such actions as may be necessary to effectuate the same and perform all obligations contemplated thereby.

14. <u>Post-Confirmation Reporting and Payment of Statutory Fees</u>. The Debtor will pay all fees pursuant to 28 U.S.C. § 1930 that are due on or before the Effective Date as described in section 2.3 of the Plan. Debtor will comply with all post-confirmation reporting obligation to the U.S. Trustee.

15. <u>Waiver of Filings</u>. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee, of which the Debtor will comply) is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

16. <u>Rights Setoff, Subrogation, or Recoupment</u>. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall discharge, release, impair, enjoin, or otherwise preclude any holder of a Claim or any current or former party to an executory contract or unexpired lease to assert any right of setoff, subrogation, or recoupment that such holder or party may have under applicable law.

17. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing shall modify the rights, if any, of the Debtor, or any Creditor, Interest Holder or party-in-interest, to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law.

18. <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto.

19. <u>Claims of Governmental Agencies Not Released</u>. Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

20. <u>Filing and Recording</u>. This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Interests existing prior to such date have been unconditionally released, discharged, and terminated, except as otherwise provided in the Plan, and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local

government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law, including, but not limited to, the transfer of any assets of the Estate to the Reorganized Debtor.

21.     Exemption from Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. All sale transactions consummated by the Debtor and approved by the Court on and after the Petition Date through and including the Effective Date, including the transfers effectuated under the Plan, if any, the sale by the Estate of property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Estate of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

22.     Exculpation, Releases and Injunctions. The exculpations, releases and injunctions contained in the Plan are hereby approved. Notwithstanding anything contained herein, the

exculpations provided in the Plan are provided to the maximum extent permitted by applicable law, and no exculpation is intended to violate section 524(e) or applicable Fifth Circuit authority including, but not limited to, *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009) and its progeny, by releasing or granting a discharge of non-debtor third party claims that may be asserted against non-debtor third parties. Furthermore, the exculpations are not intended to violate any professional ethical obligation of any Exculpated Party. For the avoidance of doubt, any exculpation granted under the Plan shall not be used in support of a final fee application or as a defense to any objection to a final application.

23.     <u>Conditions to Effective Date</u>. The Plan shall not become effective unless all conditions set forth in Article X of the Plan have been satisfied or waived pursuant to section 10.3 of the Plan.

24.     <u>Retention of Jurisdiction</u>. This Court may properly retain, and upon and after the Effective Date, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case, including the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

25.     <u>Appeal of the Confirmation Order</u>. Except as otherwise provided herein, if any provision of this Confirmation Order is hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or Reorganized Debtor prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any reversal, stay, modification, or vacatur of this Confirmation Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification,

or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto, and shall remain binding.

26. <u>Conflicts Between Confirmation Order and Plan</u>. The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference. The provisions of the Plan and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that in the event of any inconsistency among the Plan, the Disclosure Statement, and any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of the Court.

27. <u>Authorization to Consummate Plan/No Stay</u>. Notwithstanding Bankruptcy Rule 3020(e), 6004(g), 6006(d), 7062 or otherwise, but subject to Article XI of the Plan, the Debtor is authorized to consummate the Plan upon entry of this Confirmation Order, and the Confirmation Order shall take effect on the date hereof.

###

PREPARED AND SUBMITTED BY:

Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
Catherine A. Curtis, Tex. Bar No. 24095708
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, TX 75204
Phone: (214) 692-6200
Fax: (214) 692-6255
Email: jason.rudd@wickphillips.com
        scott.lawrence@wickphillips.com
        catherine.curtis@wickphillips.com

*Counsel to the Debtor and Debtor in Possession*

# Exhibit A

Debtor's Prepackaged Chapter 11 Plan

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 21-32112** |
| **HAWAIIAN VINTAGE CHOCOLATE** | § | |
| **COMPANY, INC.,** | § | **Chapter 11** |
| | § | |
| DEBTOR. | § | |

## DEBTOR'S PREPACKAGED CHAPTER 11 PLAN

**WICK PHILLIPS GOULD & MARTIN, LLP**

Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
Catherine A. Curtis, Tex. Bar No. 24095708
3131 McKinney Ave, Suite 500
Dallas, Texas 75204
Telephone: 214-692-6200
jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com
catherine.curtis@wickphillips.com

**PROPOSED COUNSEL FOR DEBTOR**

Dated: November 22, 2021

# INTRODUCTION OF PLAN

Hawaiian Vintage Chocolate Company, Inc. as debtor and debtor in possession, propose this prepackaged chapter 11 plan of reorganization (the "<u>Plan</u>") for the resolution of the outstanding Claims against, and Interests in, the Debtor. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Article I of the Plan. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, business, assets, results of operations, and historical financial information, as well as a summary and description of the Plan and certain related matters. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

# TABLE OF CONTENTS

**ARTICLE I. DEFINITIONS AND INTERPRETATION** ......................................................... 1

1.1   **Definitions** ......................................................................................................... 1

1.2   **Rules of Interpretation and Construction.** ........................................................... 8

**ARTICLE II. TREATMENT OF UNCLASSIFIED CLAIMS** ............................................. 8

2.1   **Administrative Expense Claims** .......................................................................... 8

2.2   **Fee Claims** ........................................................................................................... 9

2.3   **U.S. Trustee Fees.** ............................................................................................... 10

2.4   **Priority Tax Claims.** ........................................................................................... 10

**ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ................. 10

**ARTICLE IV. TREATMENT OF CLAIMS AND EQUITY INTERESTS** ......................... 10

4.1   **Class 1 – Priority Non-Tax Claims.** ................................................................... 10

4.2   **Class 2 – Secured Claims.** .................................................................................. 11

4.3   **Class 3 – Lender Postpetition Claims.** ............................................................... 11

4.4   **Class 4 – General Unsecured Claims.** ................................................................ 11

4.5   **Class 5 – Equity Interests.** ................................................................................. 12

**ARTICLE V. IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES** ................................................. 12

5.1   **Classes Entitled to Vote.** .................................................................................... 12

5.2   **Class Acceptance Requirement.** ......................................................................... 12

5.3   **Cramdown.** ......................................................................................................... 12

5.4   **Elimination of Classes.** ...................................................................................... 13

**ARTICLE VI. MEANS OF IMPLEMENTATION** ............................................................. 13

6.1   **Debtor's Merger with Azoth, Inc.** ...................................................................... 13

6.2     **Debtor's Merger with Inner State, Inc.** ........................................................ **15**

6.3     **Lender Settlement.** ............................................................................................ **17**

6.4     **General Settlement of Claims.** ........................................................................ **17**

6.5     **Cancellation of Existing Securities and Agreements.** .................................... **18**

6.6     **Restructuring Transactions.** ........................................................................... **18**

6.7     **Corporate Action.** ............................................................................................ **18**

6.8     **Vesting of Assets.** .............................................................................................. **18**

6.9     **Effectuating New Organizational Documents; Further Transactions.** .......... **19**

6.10    **Cooperation with the Reorganized Debtor.** .................................................... **19**

6.11    **Directors and Officers of the Reorganized Debtor.** ....................................... **19**

**ARTICLE VII. DISTRIBUTIONS** ............................................................................... **19**

7.1     **Date of Distributions.** ...................................................................................... **19**

7.2     **Sources of Distribution.** ................................................................................... **19**

7.3     **Reorganized Debtor.** ........................................................................................ **20**

7.4     **Record Date for Distributions.** ....................................................................... **20**

7.5     **Recipients of Distributions.** ............................................................................. **20**

7.6     **Delivery of Distributions and Undeliverable or Unclaimed Distributions.** ... **20**

7.7     **Means of Payment.** ........................................................................................... **21**

7.8     **Setoffs and Recoupment.** ................................................................................. **21**

7.9     **Distributions After Effective Date.** ................................................................. **21**

7.10    **Withholding and Reporting Requirements.** ..................................................... **21**

7.11    **Time Bar to Distributions.** .............................................................................. **21**

7.12    **No Fractional Distributions.** ........................................................................... **22**

7.13    **Minimum Distribution** ..................................................................................... **22**

7.14    **SEC Exemption.** ................................................................................................ **22**

**ARTICLE VIII. PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS** ................................................................................................. **23**

**8.1 Objections to Claims.** ..................................................................... **23**

**8.2 No Distributions Pending Allowance.** ............................................ **23**

**8.3 Distributions After Allowance.** ...................................................... **23**

**8.4 Disallowance of Late Filed Claims.** ............................................... **23**

**ARTICLE IX. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............................................................................................................ **23**

**9.1 Rejection of Contracts and Leases.** ............................................... **23**

**9.2 Inclusiveness.** ................................................................................. **24**

**9.3 Claims Based on Rejection of Executory Contracts or Unexpired Leases.** ................... **24**

**ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN** ............................................................... **24**

**10.1 Conditions to Confirmation of Plan.** ............................................. **24**

**10.2 Conditions to Effective Date of Plan.** ............................................ **24**

**10.3 Waiver of Conditions Precedent.** ................................................... **25**

**10.4 Effect of Failure of Conditions.** .................................................... **25**

**10.5 Reservation of Rights.** .................................................................... **25**

**ARTICLE XI. EFFECT OF CONSUMMATION** ............................................. **25**

**11.1 Discharge of Claims and Interests in the Debtor.** ......................... **25**

**11.2 Injunction against Interference with Plan.** ................................... **26**

**11.3 Exculpation.** ................................................................................... **26**

**11.4 Debtor and Estate Releases** .......................................................... **26**

**11.5 Injunction and Stay.** ...................................................................... **27**

**11.6 Preservation of Claims.** ................................................................. **27**

**11.7 Compromise of Controversies.** ...................................................... **28**

**ARTICLE XII. RETENTION OF JURISDICTION**....................................................................... 28

**ARTICLE XIII. MISCELLANEOUS**............................................................................................. 29

**13.1   Payment of Statutory Fees.** ...................................................................................... 29

**13.2   Filing of Additional Documents.**.............................................................................. 29

**13.3   Schedules, Exhibits and Plan Supplement Incorporated.** ...................................... 29

**13.4   Amendment or Modification of the Plan.** ................................................................ 29

**13.5   Inconsistency.** ........................................................................................................... 30

**13.6   Exemption from Certain Transfer Taxes.** ............................................................... 30

**13.7   Expedited Tax Determination.**................................................................................. 30

**13.8   Binding Effect.**......................................................................................................... 30

**13.9   Severability.** ............................................................................................................. 30

**13.10  No Payment of Attorneys' Fees.** .............................................................................. 31

**13.11  Notices.** ..................................................................................................................... 31

**13.12  Governing Law.**........................................................................................................ 31

Debtor Hawaiian Vintage Chocolate Company, Inc. proposes the following Prepackaged Chapter 11 Plan of Reorganization pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I. DEFINITIONS AND INTERPRETATION

### 1.1    Definitions

For the purpose of this Plan, the following terms shall have the respective meanings set forth below:

*Action* means any claim, action, cause of action, demand, lawsuit, arbitration, notice of violation, proceeding, litigation, citation, or summons, whether civil, criminal, administrative, regulatory, or otherwise, whether at law or in equity.

*Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Case that is Allowed pursuant to sections 503(b) or 507 of the Bankruptcy Code, including, without limitation, (i) any fees or charges assessed against the Estate under 28 U.S.C. § 1930, (ii) Fee Claims, and (iii) other Administrative Expense Claims as may be ordered and Allowed by the Bankruptcy Court.

*Allowed* means, with reference to any Claim or Equity Interest, (i) for which a proof of claim or proof of interest has been filed and as to which no objection has been interposed on or before the Objection Deadline or such other applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (ii) which appears in the Debtor's Schedules and is not listed as contingent, liquidated or disputed, or if the Schedules are not filed, then appears in the Debtor's books and records as a valid Claim or Equity Interest, (iii) which is allowed by Final Order of the Bankruptcy Court, or (iv) which is expressly allowed under this Plan.

*Avoidance Actions* means Actions arising under sections 502, 510, 541, 542, 543, 544, 545, 547 through and including 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Actions, and which may be recovered pursuant to section 550 of the Bankruptcy Code.

*Azoth* or *Azoth, Inc.* means Azoth, Inc., a Delaware corporation.

*Azoth Shareholders* means the holders of shares, equity securities, equity interests, or ownership interests in Azoth Inc. as of the Petition Date.

*Ballot* means the ballot provided to holders of Claims or Equity Interests to indicate their votes to accept or reject the Plan.

*Bankruptcy Code* means title 11 of the United States Code, as amended from time to time.

*Bankruptcy Court* means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court of the United States having jurisdiction over the Chapter 11 Case.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended and in effect from time to time.

**Bar Date** means the last date to file proofs of claim or interest against the Debtor.

**Business Day** means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

**Cash** means legal tender of the United States of America.

**Chapter 11 Case** means the above-captioned chapter 11 bankruptcy case.

**Claim** means a claim against the Debtor or the Estate within the meaning of section 101(5) of the Bankruptcy Code.

**Class** means any group of Claims or Equity Interests classified by this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**Collateral** means any property or interest in property of the Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state or federal law.

**Confirmation Date** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**Confirmation Hearing** means the hearing conducted by the Bankruptcy Court pursuant to sections 1128(a) and 1129 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**Confirmation Order** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**Credit Agreements** means those certain (1) Secured Superpriority Debtor-in-Possession Promissory Note by and between the Debtor and the Lender, (2) any other postpetition financing agreements between the Debtor and the Lender.

**Debtor** means Hawaiian Vintage Chocolate Company, Inc., in its capacity as chapter 11 debtor.

**Disallowed Claim or Equity Interest** means any Claim or Equity Interest, or portion thereof that is not an Allowed Claim, an Allowed Equity Interest, or a Disputed Claim or Disputed Equity Interest.

**Disclosure Statement** means that certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented, or otherwise modified from time to time.

*Disputed Claim or Equity Interest* means, with respect to a Claim or Equity Interest, such Claim or Equity Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) with respect to which the Debtor or Reorganized Debtor or any party in interest has interposed a timely objection (as a contested matter, adversary proceeding, or otherwise) or request for estimation prior to the Objection Deadline in accordance with the Plan or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the Effective Date.

*Distribution Date* means the date, occurring on or as soon as practicable after the Effective Date, on which the Reorganized Debtor first makes distributions to holders of Allowed Claims and Allowed Equity Interests as provided in the Plan.

*Distribution Record Date* means the record date for purposes of receiving distributions under the Plan on account of Allowed Claims and Allowed Equity Interests, which shall be November 22, 2021.

*Effective Date* means the first Business Day on which all the conditions precedent to the effectiveness of the Plan specified in Section 10.2 hereof shall have been satisfied or waived as provided in Section 10.3 hereof; *provided*, *however*, that if a stay, injunction or similar prohibition of the Confirmation Order is in effect, the Effective Date shall be the first Business Day after such stay, injunction or similar prohibition is no longer in effect.

*Entity* has the meaning set forth in section 101(15) of the Bankruptcy Code.

*Equity Interest* means any "equity security" of the Debtor, as that term is defined in section 101(16) of the Bankruptcy Code.

*Estate* means the Debtor's estate as created under section 541 of the Bankruptcy Code.

*Exculpated Parties* means the Debtor, the Reorganized Debtor, Wick Phillips Gould & Martin, LLP, and the Lender.

*Fee Claim* means any Claim by a Professional Person under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Chapter 11 Case.

*Final Order* means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the

possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

**General Unsecured Claim** means any Claim against the Debtor that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a DIP Lender Claim, or an Equity Interest. General Unsecured Claim includes any unsecured claim held by the holder of an Other Secured Claim as a result of the operation of section 506(a)(1) of the Bankruptcy Code.

**Governmental Unit** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**Holder** means an Entity holding a Claim or an Interest, as applicable. "Hold" and "Held" shall have the correlative meanings.

**Impaired** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**Insider** means any Person who is an "insider" as such term is defined in section 101(31) of the Bankruptcy Code, or who may otherwise be determined to be an "insider" under section 101(31) of the Bankruptcy Code by a court of competent jurisdiction.

**Interest** means any equity security (as defined in section 101(16) of the Bankruptcy Code) in Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest.

**ISH** means Inner State Health, Inc., a successor to the Debtor incorporated as a Delaware corporation on the Effective Date from the merger of Inner State, Inc. and a newly formed subsidiary of the Reorganized Debtor.

**ISH Class A Common Stock** means the New Common Stock in ISH for which the holder of each share is entitled to ten (10) votes on account of that share in any shareholder vote.

**ISH Class B Common Stock** means the New Common Stock in ISH for which the holder of each share is entitled to one (1) vote on account of that share in any shareholder vote.

**ISH Six Month Warrant** means a warrant to purchase a share of ISH Class B Common Stock at an exercise price of $6.00 per share, expiring on the date that is six (6) months after the Effective Date.

**ISH Twelve Month Warrant** means a warrant to purchase a share of ISH Class B Common Stock at an exercise price of $9.00 per share, expiring on the date that is twelve (12) months after the Effective Date.

*ISH Twenty-Four Month Warrant* means a warrant to purchase a share of ISH Class B Common Stock at an exercise price of $15.00 per share, expiring that date that is twenty-four (24) months after the Effective Date.

*ISI Warrants* means, together, the ISI Six Month Warrants, the ISI Twelve Month Warrants and the ISI Twenty-Four Month Warrants.

*ISI* means Inner State, Inc., a Delaware Corporation.

*KIMO* and *KIMO, Inc.* means KIMO, Inc., the Reorganized Debtor as reincorporated in Delaware and renamed on the Effective Date, a successor to the Debtor under the Plan.

*KIMO Class A Common Stock* means the New Common Stock in the Reorganized Debtor for which the holder of each share is entitled to ten (10) votes on account of that share in any shareholder vote.

*KIMO Class B Common Stock* means the New Common Stock in the Reorganized Debtor for which the holder of each share is entitled to one (1) vote on account of that share in any shareholder vote.

*KIMO Six Month Warrant* means a warrant to purchase a share of Kimo Class B Common Stock at an exercise price of $10.00 per share, expiring on the date that is six (6) months after the Effective Date.

*KIMO Twelve Month Warrant* means a warrant to purchase a share of Kimo Class B Common Stock at an exercise price of $15.00 per share, expiring on the date that is twelve (12) months after the Effective Date.

*KIMO Twenty-Four Month Warrant* means a warrant to purchase a share of Kimo Class B Common Stock at an exercise price of $20.00 per share, expiring that date that is twenty-four (24) months after the Effective Date.

*KIMO Warrants* means, together, the KIMO Six Month Warrants, the KIMO Twelve Month Warrants and the KIMO Twenty-Four Month Warrants.

*Lender* means Allison Investment Corporation, in its capacity as prepetition and postpetition lender to the Debtor.

*Lender Note* means loan proceeds of up to $150,000.00, funded to the Reorganized Debtor after entry of the DIP Order pursuant to the Secured Superpriority Debtor-in-Possession Promissory Note.

*Lender Postpetition Claim* means a Claim held by the Lender resulting from the Lender's loans under the Postpetition Financing Orders and the Credit Agreements.

*Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

*Local Rules* means the Bankruptcy Local Rules of the United States Bankruptcy Court for the Northern District of Texas, as the same may be amended or modified from time to time.

*New Common Stock* means the new common stock in Reorganized Debtor and any of its subsidiaries whether issued or unissued on the Effective Date, including those shares to be distributed under and in accordance with the Plan.

*New Organizational Documents* means such certificates or articles of incorporation, bylaws, limited liability company operating agreements, stockholders' agreements, or other applicable formation and governance documents of the Reorganized Debtor, the Target Subs and the ISH Sub.

*Non-Insider* means a Person who is not an Insider.

*Objection Deadline* means the later of (a) one hundred twenty (120) days after the Effective Date and (b) such later as may be ordered by the Bankruptcy Court prior to the expiration of such one hundred twenty (120) day period, upon motion.

*Petition Date* means the date the Debtor filed this Chapter 11 Case, expected to be November 29, 2021, or as soon as practicable.

*Person* means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

*Plan* means this Chapter 11 Plan, as the same may be amended, supplemented or otherwise modified from time to time, including any exhibits and schedules hereto.

*Postpetition Financing Orders* means orders entered by the Bankruptcy Court approving postpetition financing for the Debtor from the Lender.

*Priority Non-Tax Claim* means any Claim that is entitled to priority in payment pursuant to sections 507(a)(4), (5), (6) or (7) of the Bankruptcy Code and that is not an Administrative Expense Claim or a Priority Tax Claim.

*Priority Tax Claim* means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

*Professional Fee Escrow* means all funds the Lender paid to the Debtor to fund the payment of the Debtor's Professional Persons' fees and expenses pursuant to the terms of the Postpetition Financing Orders.

*Professional Person* means any Person retained or to be compensated by the Debtor pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

*Pro Rata* means the proportion that the amount of an Allowed Claim or Allowed Equity Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Equity Interests in such Class.

*Released Parties* means, collectively, the Lender and its predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, shareholders, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees.

*Releasing Parties* means the Debtor, the Reorganized Debtor, and the Estate on behalf of themselves and their respective successors, assigns, and representatives and any and all other entities that may purport to assert any cause of action derivatively, by or through the foregoing entities, as defined in Section 11.4.

*Reorganized Debtor* means KIMO, Inc., as reorganized pursuant to and under the Plan or any successor thereto, as set forth in the Plan and the New Organizational Documents following the Effective Date of this Plan.

*Reorganized Board* means the board of directors of Reorganized Debtor on and after the Effective Date.

*Restructuring Transactions* means those amalgamations, consolidations, arrangements, continuances, restructurings, transfers, sales, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtor reasonably determines to be necessary or desirable to merge with Azoth, Inc. and form subsidiaries to further merge with Inner State, Inc., including, without limitation, the transactions contemplated by the New Organizational Documents.

*Schedules* means, collectively, Schedules A through H and the Statement of Financial Affairs, as filed by the Debtor in the Chapter 11 Case, as the same may have been or may be amended from time to time.

*SEC* means the Securities and Exchange Commission.

*Secured Claim* means a Claim secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which the Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by the Debtor and the holder of such Claim.

*Securities Act* means the Securities Act of 1933, 15 U.S.C. §§ 77–77a, as amended, together with the rules and regulations promulgated thereunder.

*Security* or *Securities* has the meaning set forth in section 2(a)(1) of the Securities Act.

*Subordinated Claim* means any Claim or Equity Interest that is subject to (a) subordination under section 510 of the Bankruptcy Code or any other statute, (b) contractual subordination, (c) equitable subordination as determined by the Bankruptcy Court in a Final Order, including, without limitation, any Claim or Equity Interest (i) for or arising from the rescission of a purchase, sale, issuance, or offer of a Security of the Debtor; (ii) for damages arising from the purchase or sale of such a Security; or (iii) for reimbursement, indemnification, or contribution allowed under

section 502 of the Bankruptcy Code on account of such Claim or Equity Interest, (d) a Claim or Equity Interest that is subordinated by agreement of the holder, or (e) any Claim or Equity Interest acquired by a holder of a Claim or Equity Interest that is subordinated under this Plan.

**U.S. Trustee** means the Office of the U.S. Trustee Region 6 for the Northern District of Texas**.**

**Unimpaired** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

**Voting Deadline** means the date set by the Bankruptcy Court by which Ballots for accepting or rejecting the Plan must be received.

**1.2 Rules of Interpretation and Construction.**

(a) <u>Interpretation</u>. Unless otherwise specified herein, all section, article, and exhibit references in the Plan are to the respective section in, article of, and exhibit to, the Plan, as the same may be amended, waived or modified from time to time. All headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

(b) <u>Construction and Application of Bankruptcy Code Definitions</u>. Unless otherwise defined herein, words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan. Words or terms used but not defined herein shall have the meanings ascribed to such terms or words, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

(c) <u>Other Terms</u>. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan.

(d) <u>Time</u>. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II. TREATMENT OF UNCLASSIFIED CLAIMS

**2.1 Administrative Expense Claims.**

All Administrative Expense Claims against the Estate, other than Fee Claims, shall be treated as follows:

(a) <u>Time for Filing</u>. All holders of Administrative Expense Claims, other than Professional Persons holding Fee Claims, shall file with the Bankruptcy Court a request for payment of such Claims within thirty (30) days after the Effective Date. Any such request must be served on the Reorganized Debtor and its counsel, and must, at a minimum, set forth (i) the name of the holder of the Administrative Expense Claim; (ii) the amount of the Administrative Expense Claim; and (iii) the

basis for the Administrative Expense Claim. A failure to file any such request in a timely fashion will result in the Administrative Expense Claim in question being discharged and its holder forever barred from asserting such Administrative Expense Claim against the Estate or any other Person.

(b)     Allowance. An Administrative Expense Claim for which a request for payment has been properly filed shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is twenty-one (21) days after a request for payment of such Administrative Expense Claim is filed. If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

(c)     Payment. Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment of such Claim, each holder of an Allowed Administrative Expense Claim shall receive, on account of and in full satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Administrative Expense Claim on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) ten (10) days after entry of an order by the Bankruptcy Court allowing such Administrative Expense Claim. The Debtor or Reorganized Debtor, as applicable, shall pay Allowed Administrative Expense Claims from cash on hand or as otherwise agreed by the holder of the Allowed Fee Claim and the Debtor or the Reorganized Debtor, as applicable.

(d)     Lender Exception. Lender is excepted from the obligations of this Section 2.1. The terms of this Section 2.1 shall not apply to Lender. The Lender Postpetition Claim Lender holds is deemed to be an Allowed Administrative Expense Claim pursuant to the terms of the Postpetition Financing Order. Lender has agreed to the treatment of its Allowed Administrative Expense Claim as described in Section 4.2 of this Plan.

**2.2     Fee Claims.**

Every Professional Person holding a Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order approving the same shall file a final application for payment of fees and reimbursement of expenses no later than the date that is thirty (30) days after the Effective Date. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Allowed Fee Claims subject to the Professional Fee Escrow shall be paid by the Debtor from the Professional Fee Escrow pursuant to the terms of the Postpetition Financing Order. To the extent an Allowed Fee Claims is not covered by the Professional Fee Escrow, then such Allowed Fee Claims shall be paid by the Debtor or Reorganized Debtor, as applicable, in Cash within ten (10) days of enter of the order Allowing the Fee Claim.

### 2.3 U.S. Trustee Fees.

All fees payable under section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Case shall be paid by the Reorganized Debtor.

### 2.4 Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim has agreed or agrees to a different treatment of such Claim, each holder of an Allowed Priority Tax Claim shall receive on (or as soon as reasonably practicable after) the Effective Date, Cash in an amount equal to the Allowed amount of such Claim. To the extent the holder of an Allowed Priority Tax Claim has a Lien on Estate property, such Lien shall remain in place until such Allowed Priority Tax Claim has been paid in full.

## ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

All Claims against, and Equity Interests in, the Debtor are classified for all purposes, including voting, confirmation, and distribution, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | No | No (deemed to accept) |
| Class 2 | Secured Claims | Yes | Yes |
| Class 3 | Lender Postpetition Claims | Yes | Yes |
| Class 4 | General Unsecured Claims | Yes | Yes |
| Class 5 | Equity Interests | Yes | Yes |

Administrative Expense Claims and Priority Tax Claims, other than the Lender Postpetition Claim, are not classified for purposes of voting or receiving distributions under the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code. Instead, all such Claims shall be treated separately as unclassified claims on the terms previously set forth in Article II of this Plan.

## ARTICLE IV. TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1 Class 1 – Priority Non-Tax Claims.

Except to the extent that a Holder of an Allowed Priority Non-Tax Claim against the Estate agrees to a less favorable treatment, each such Holder shall receive, in full satisfaction of such Claim, payment in full in by the Debtor or Reorganized Debtor, as applicable, on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) ten (10) days after such Priority Non-Tax Claim becomes Allowed. Holders of Priority Non-Tax Claims are unimpaired, deemed to accept the Plan, and not entitled to vote thereon. The Debtor believes that, as of the Effective Date, there will be no claims in Class 1.

**4.2    Class 2 – Secured Claims.**

On the Effective Date (or as soon as reasonably practicable thereafter), except to the extent that a Holder of an Allowed Secured Claim against the Estate agrees to less favorable treatment, each Holder of an Allowed Secured Claim shall, at the Debtor's option, receive one of the following treatments: (i) the Collateral securing such Allowed Secured Claim; or (ii) Cash distributions from the Reorganized Debtor totaling the amount of the Allowed Secured Claim, paid in five equal annual installments, plus interest at 6% per annum, secured by the Collateral securing such Allowed Secured Claim. Holders of secured claims are Impaired under the Plan and may vote. The Debtor believes that, as of the Effective Date, there will be no claims in Class 2.

**4.3    Class 3 – Lender Postpetition Claims.**

Except to the extent that the Holder of the Allowed Lender Postpetition Claim against the Estate agrees to a different treatment, the Holder of an Allowed Lender Postpetition Claim shall receive the following, in full satisfaction of such Claim:

| | Description | Amount |
|---|---|---|
| 1. | KIMO Class B Common Stock | 40,388 |
| 2. | KIMO Six Month Warrants | 8,000 |
| 3. | KIMO Twelve Month Warrants | 12,000 |
| 4. | KIMO Twenty-Four Month Warrants | 12,000 |
| 5. | ISH Class B Common Stock | 15,000 |
| 6. | ISH Six Month Warrants | 8,000 |
| 7. | ISH Twelve Month Warrants | 8,000 |
| 8. | ISH Twenty-Four Month Warrants | 8,000 |

Lender Postpetition Claims are Impaired under the Plan. Holders of Lender Postpetition Claims may vote.

**4.4    Class 4 – General Unsecured Claims.**

Except to the extent that a Holder of an Allowed General Unsecured Claim against the Estate agrees to a different treatment, each Holder of an Allowed General Unsecured Claim shall receive, in full satisfaction of such Claim, a Pro Rata share of the following:

| | Description | Amount |
|---|---|---|
| 1. | KIMO Class B Common Stock | 100,969 |
| 2. | KIMO Six Month Warrants | 20,000 |
| 3. | KIMO Twelve Month Warrants | 30,000 |
| 4. | KIMO Twenty-Four Month Warrants | 30,000 |
| 5. | ISH Class B Common Stock | 37,500 |
| 6. | ISH Six Month Warrants | 20,000 |
| 7. | ISH Twelve Month Warrants | 20,000 |
| 8. | ISH Twenty-Four Month Warrants | 20,000 |

General Unsecured Claims are Impaired under the Plan. Holders of General Unsecured Claims may vote.

### 4.5 Class 5 – Equity Interests.

Except to the extent that a Holder of an Allowed Equity Interest in the Debtor agrees to a different treatment, all Equity Interests in the Debtor shall be canceled as the Effective Date and each Holder of an Allowed Equity Interest shall receive, in full satisfaction of and replacement of their Allowed Equity Interest, a Pro Rata share of the following:

|   | Description | Amount |
|---|---|---|
| 1. | KIMO Class B Common Stock | 868,336 |
| 2. | KIMO Six Month Warrants | 172,000 |
| 3. | KIMO Twelve Month Warrants | 258,000 |
| 4. | KIMO Twenty-Four Month Warrants | 258,000 |
| 5. | ISH Class B Common Stock | 322,500 |
| 6. | ISH Six Month Warrants | 172,000 |
| 7. | ISH Twelve Month Warrants | 172,000 |
| 8. | ISH Twenty-Four Month Warrants | 172,000 |

The Debtor estimates that a Holder of Allowed Equity Interests will receive approximately five (5) shares of KIMO Class B Common Stock, one (1) KIMO Twelve Month Warrant, and two (2) KIMO Twelve Month Warrants and two KIMO Twenty-Four Month Warrants for every 100 shares of the Debtor's common stock the Holder owned on the Petition Date under the Plan. Equity Interests are Impaired under the Plan. Holders of Equity Interests may vote.

## ARTICLE V. IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES

### 5.1 Classes Entitled to Vote.

The holders of Claims in Class 1 are unimpaired, conclusively deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. The holders of claims in Classes 2, 3, 4, and 5 are impaired and entitled to vote to accept or reject the Plan.

### 5.2 Class Acceptance Requirement.

A Class of impaired Claims shall have accepted the Plan if the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Claims in such Class who have voted on the Plan have voted to accept the Plan. A Class of impaired Equity Interests shall have accepted the Plan if at least two-thirds (2/3) in amount of Equity Interests in such Class who have voted on the Plan have voted to accept the Plan.

### 5.3 Cramdown.

To the extent that any Class is impaired under the Plan and such Class fails to accept the Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Debtor hereby requests

that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

### 5.4 Elimination of Classes.

Any Class that does not contain any Allowed Claims or any Claims temporarily Allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed not included in this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether such Class has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE VI. MEANS OF IMPLEMENTATION

### 6.1 Debtor's Merger with Azoth, Inc.

(a)     On the Effective Date, the Debtor shall merge with Azoth, Inc. and the resulting merged Reorganized Debtor shall be renamed "KIMO, Inc." and will be incorporated in Delaware. The Debtor is authorized to enter into an agreement of merger (as may be amended, revised or supplemented) with Azoth, Inc. and any related agreements or filings without the need for any further corporate or organizational action and without further action by or approval of the Bankruptcy Court. KIMO, Inc. shall be deemed a "successor" to the Debtor and "affiliate" of the Debtor under Section 1145 of the Bankruptcy Code.

(b)     As a result of the Azoth Merger, the Reorganized Debtor will own and operate the following wholly owned subsidiaries:

(i)     DWLL LLC ("DWLL Sub"),

(ii)     Surf City Still Works LLC ("Surf City Sub"), and

(iii)     Kimo Sabe S.A.P.I. de CV ("Kimo Sabe Sub", together with the DWLL Sub and the Surf City Sub, the "Target Subs").

(c)     The Reorganized Debtor is authorized to create and issue up to 100,000,000 shares of New Common Stock in KIMO, including KIMO Class A Common Stock, KIMO Class B Common Stock, for distribution and reserve (together, the "KIMO Common Stock").

(d)     The Reorganized Debtor is authorized to issue and distribute from the KIMO Common Stock the following:

| Recipients | Amount |
|---|---|
| **KIMO Class B Common Stock** | **17,182,316** |
| Class 3 Creditors | 40,388 |
| Class 4 Creditors | 100,969 |
| Class 5 Equity Interests | 868,336 |
| Azoth, Inc. Shareholders | 12,172,623 |

| | | |
|---|---|---:|
| | Reserve (includes Warrants) | 6,009,698 |
| **KIMO Class A Common Stock** | | **12,060,000** |
| | Azoth, Inc. Shareholders | 12,060,000 |
| | Reserve (includes Warrants) | n/a |
| **KIMO Six Month Warrants** | | **200,000** |
| | Class 3 Creditors | 8,000 |
| | Class 4 Creditors | 20,000 |
| | Class 5 Equity Interests | 172,000 |
| | Azoth, Inc. Shareholders | - |
| | Reserve (includes Warrants) | n/a |
| **KIMO Twelve Month Warrants** | | **300,000** |
| | Class 3 Creditors | 12,000 |
| | Class 4 Creditors | 30,000 |
| | Class 5 Equity Interests | 258,000 |
| | Azoth, Inc. Shareholders | - |
| | Reserve (includes Warrants) | n/a |
| **KIMO Twenty-Four Month Warrants** | | **300,000** |
| | Class 3 Creditors | 12,000 |
| | Class 4 Creditors | 30,000 |
| | Class 5 Equity Interests | 258,000 |
| | Azoth, Inc. Shareholders | - |
| | Reserve (includes Warrants) | n/a |

(e)     The Reorganized Debtor shall not be required to distribute "odd lot" or fractional KIMO Common Shares or KIMO Warrants and may round up all distributions to the next whole number.

(f)     All KIMO Common Stock created, issued or reserved pursuant to the Plan, including all KIMO Common Stock issued upon exercise of KIMO Warrants, shall have no par value and each share of KIMO Common Stock shall rank equally in rights, dividends and returns, except as to voting power. KIMO Common Stock shall bear the following legend:

> The securities represented by this certificate have not been registered under the Securities Act of 1933 and were issued pursuant to an exemption provided by 11 U.S.C. Section 1145, under an order confirming a chapter 11 plan in a case entitled *In re Hawaiian Vintage Chocolate Company, Inc*. 21-[•] in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. The holder of this certificate is referred to 11 U.S.C. Section 1145 (b) and (c) for guidance to the sales of these securities.

(g)     All KIMO Common Stock shall be free trading for the purposes of public or private sales, to the extend allowed by Section 1145 of the Bankruptcy Code and applicable law. Further, recipients of the stock and warrants under the Plan shall not be deemed underwriters, controlling person, or affiliates of the issuer, in

connection with their resale or other disposition or liquidation, except as required by applicable law. Notwithstanding the information provided in the Disclosure Statement regarding the value of the respective issuers, the value of the KIMO Common Stock and KIMO Warrants to be distributed in connection with the Plan should be considered speculative.

(h)     Confirmation shall be deemed approval of the agreement of merger (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtor or the Reorganized Debtor in connection therewith), to the extent not approved by the Bankruptcy Court previously, and the Reorganized Debtor is authorized to execute and deliver those documents necessary or appropriate to effectuate the terms of the agreement of merger, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtor may deem to be necessary to consummate the agreement of merger.

**6.2     Debtor's Merger with Inner State, Inc.**

(a)     On the Effective Date, the Reorganized Debtor shall incorporate Inner State Health, Inc. as Delaware corporation as a wholly owned subsidiary of the Reorganized Debtor. The Reorganized Debtor is authorized to merge ISH with Inner State, Inc. (the "ISI Merger"). The resulting merged subsidiary of the Reorganized Debtor shall be named "Inner State Health, Inc.". The Reorganized Debtor and ISH are authorized to enter into the agreement of merger (as may be amended, revised or supplemented) with ISI and any related agreements or filings without the need for any further corporate or organizational action and without further action by or approval of the Bankruptcy Court. Inner State Health, Inc. shall be deemed a "successor" to the Debtor and "affiliate" of the Debtor under Section 1145 of the Bankruptcy Code.

(b)     As a result of the ISI Merger, the Reorganized Debtor will own ISH and is authorized on the Effective Date to create and issue up to 75,000,000 shares of New Common Stock in ISH, including 8,000,000 shares of ISH Class A Common Stock, 16,000,000 shares of ISH Class B Common Stock, for distribution and reserve (together, the "ISH Common Stock"). Through the issuance of the ISH Common Stock, the Reorganized Debtor will spin-off ISH, making the ISH Common Stock separately traded from the KIMO Stock.

(c)     The Reorganized Debtor is authorized to issue and distribute from the ISH Common Stock the following:

| Recipients | Amount |
|---|---|
| **ISH Class B Common Stock** | **16,000,000** |
| Class 3 Creditors | 15,000 |
| Class 4 Creditors | 37,500 |

| | | |
|---|---|---:|
| | Class 5 Equity Interests | 322,500 |
| | ISI Shareholders | 1,598,000 |
| | Reserve (includes Warrants) | 14,027,000 |
| **ISH Class A Common Stock** | | **8,000,000** |
| | ISI Shareholders | 8,000,000 |
| | Reserve | n/a |
| **ISH Six Month Warrants** | | **200,000** |
| | Class 3 Creditors | 8,000 |
| | Class 4 Creditors | 20,000 |
| | Class 5 Equity Interests | 172,000 |
| | ISI Shareholders | - |
| | Reserve | n/a |
| **ISH Twelve Month Warrants** | | **200,000** |
| | Class 3 Creditors | 8,000 |
| | Class 4 Creditors | 20,000 |
| | Class 5 Equity Interests | 172,000 |
| | ISI Shareholders | - |
| | Reserve | n/a |
| **ISH Twenty-Four Month Warrants** | | **200,000** |
| | Class 3 Creditors | 8,000 |
| | Class 4 Creditors | 20,000 |
| | Class 5 Equity Interests | 172,000 |
| | ISI Shareholders | - |
| | Reserve | n/a |

(d)     The Reorganized Debtor shall not be required to distribute "odd lot" or fractional ISH Common Shares or ISH Warrants and may round up all distributions to the next whole number.

(e)     All ISH Common Stock created, issued or reserved pursuant to the Plan, including all ISH Common Stock issued upon exercise of ISH Warrants shall have no par value and each share of ISH Common Stock shall rank equally in rights, dividends and returns, except as to voting power. ISH Common Stock shall bear the following legend:

> The securities represented by this certificate have not been registered under the Securities Act of 1933 and were issued pursuant to an exemption provided by 11 U.S.C. Section 1145, under an order confirming a chapter 11 plan in a case entitled *In re Hawaiian Vintage Chocolate Company, Inc*. 21-[•] in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. The holder of this certificate is referred to 11 U.S.C. Section 1145 (b) and (c) for guidance to the sales of these securities.

(f)     All ISH Common Stock shall be free-trading for the purposes of public or private sales, to the extend allowed by Section 1145 of the Bankruptcy Code and

applicable law. Further, recipients of the stock and warrants under the Plan shall not be deemed underwriters, controlling person, or affiliates of the issuer, in connection with their resale or other disposition or liquidation, except as required by applicable law. Notwithstanding the information provided in the Disclosure Statement regarding the value of the respective issuers, the value of the ISH Common Stock and ISH Warrants to be distributed in connection with the Plan should be considered speculative.

(g)     Confirmation shall be deemed approval of the agreement of merger (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtor or the Reorganized Debtor in connection therewith), to the extent not approved by the Bankruptcy Court previously, and the Reorganized Debtor is authorized to execute and deliver those documents necessary or appropriate to effectuate the terms of the agreement of merger, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtor may deem to be necessary to consummate the agreement of merger.

### 6.3     Lender Settlement.

This Plan constitutes a settlement under Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code between the Releasing Parties on the one hand and the Released Parties on the other hand in complete and final resolution of all claims the Releasing Parties may have against the Released Parties (the "Lender Settlement"). In consideration for: (i) the Lender's provision of financing pursuant to the Credit Agreements and the Postpetition Financing Order, (ii) the Lender's agreement to provide the Lender Note, and (iii) the Lender's agreement to satisfaction of the Lender Note in exchange for New Common Stock, the Debtor proposes to waive, release, and agree not to sue Lender upon any claim or cause of action based on: (a) avoidance and recovery of the value of any transaction between the Debtor or any of its affiliates and the Lender (b) the Lender's proposals to provide and provision of prepetition and postpetition financing; (c) any of the Lender's acts or omissions related to the Debtor, the Chapter 11 Case or any Claim; and (d) any and all claims and causes of action in existence as of the Effective Date, whether known or unknown, in existence or not in existence, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, held by the Releasing Parties against the Released Parties.

### 6.4     General Settlement of Claims.

The Plan constitutes and evidences a compromise and settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019. In consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan.

### 6.5 Cancellation of Existing Securities and Agreements.

Except as otherwise provided in the Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Interests in Debtor, shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or any Holder or other person and the obligations of the Debtor or Reorganized Debtor, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged.

### 6.6 Restructuring Transactions.

On the Effective Date, the Debtor will effectuate the Restructuring Transactions, and will take any actions as may be necessary or advisable to effect a corporate restructuring as provided in the Plan. The actions to implement the Restructuring Transactions may include, as applicable, and without limitation: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, including, if applicable, the formation of any entity or entities that will constitute, in whole or in part, the Reorganized Debtor; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents pursuant to applicable state law; (4) the execution and delivery of the New Organizational Documents; (5) the issuance of the New Common Stock as set forth in the Plan; and (6) all other actions that the applicable Entities determine to be necessary or advisable, including making filings or recordings that may be required by law in connection with the Plan.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

### 6.7 Corporate Action.

Upon the Effective Date, all actions contemplated under the Plan and in the New Organizational Documents shall be deemed authorized and approved in all respects.

### 6.8 Vesting of Assets.

Except as otherwise provided in the Plan, on the Effective Date, the Estate's assets shall automatically transfer to and vest in the Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances.

### 6.9 Effectuating New Organizational Documents; Further Transactions.

On and after the Effective Date, the Debtor is authorized to and may issue, execute, deliver, file, or record such New Organizational Documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### 6.10 Cooperation with the Reorganized Debtor.

All Holders of Claims or Equity Interests, the Reorganized Debtor, the Lender, and any owner or assignee of the Property shall fully cooperate with the Reorganized Debtor with objections to any Claims or Equity Interests. The Bankruptcy Court retains jurisdiction to order appropriate relief under this Plan provision.

### 6.11 Directors and Officers of the Reorganized Debtor.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtor disclosed the identity and affiliations of each person proposed to be an officer or to serve on the initial board of directors of any of the Reorganized Debtor. To the extent any such director or officer of the Reorganized Debtor is an "insider" under the Bankruptcy Code, the Debtor also will disclose the nature of any compensation to be paid to such director or officer. Each such director or officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents. As of the Effective Date, the initial Reorganized Board shall consist of the following six directors: (1) James Walsh, Chairman of the Board and CEO, (2) Tom Smith, (3) Ashley Kvamme, (4) Ed Parker, (5) Bruce Culver, and (6) Josh Kornoff. James Walsh is the only Insider of the Debtor that will serve on the Board and as the CEO of the Reorganized Debtor and will have a salary of $1.00. As of the Effective Date, the terms of the current members of the boards of directors or managers, as applicable, of the Debtor shall expire. After the Effective Date, the officers of the Reorganized Debtor shall be appointed in accordance with the respective New Organizational Documents.

## ARTICLE VII. DISTRIBUTIONS

### 7.1 Date of Distributions.

Unless otherwise provided in this Plan, any distributions or deliveries to be made under this Plan shall be made on the Effective Date or as otherwise contemplated herein. Thereafter, the Reorganized Debtor will make distributions from time to time in accordance with this Plan and the New Organizational Documents. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 7.2 Sources of Distribution.

All distributions will be made by the Reorganized Debtor to holders of Claims or Equity Interests in the form of the New Common Stock. Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth herein applicable to

such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. The issuance, distribution, or authorization, of certain securities in connection with the Plan will be exempt from SEC registration to the fullest extent permitted by law, as described more fully in section 7.14 below.

### 7.3 Reorganized Debtor.

All distributions under the Plan shall be made by the Reorganized Debtor. The Reorganized Debtor shall not be required to post any bond, surety or other security for the performance of its duties hereunder unless otherwise ordered by the Bankruptcy Court. The Reorganized Debtor shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent him with respect to its responsibilities, (d) compensate and reimburse such professionals, and (e) exercise such other powers as may be vested in the Reorganized Debtor by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Reorganized Debtor to be necessary and proper to implement the provisions hereof.

### 7.4 Record Date for Distributions.

At the close of business on the Distribution Record Date, the transfer ledgers or registers for Claims against the Debtor shall be closed, and there shall be no further changes in the record holders of such Claims. Neither the Debtor nor the Reorganized Debtor shall have any obligation to recognize any transfer of any of the foregoing occurring after the Distribution Record Date, and shall be entitled instead to recognize for all purposes hereunder, including to effect distributions hereunder, only those record holders stated on the transfer ledgers or registers maintained by the Debtor as of the close of business on the Distribution Record Date.

### 7.5 Recipients of Distributions.

All distributions to holders of Allowed Claims or Equity Interests under the Plan shall be made to the holder of the Claim or Equity Interest as of the Distribution Record Date. Changes as to the holder of a Claim or Equity Interest after the Distribution Record Date shall only be valid and recognized for distribution if notice of such change is filed with the Bankruptcy Court, in accordance with Bankruptcy Rule 3001 (if applicable) and served upon the Debtor and its counsel and, if applicable, the Reorganized Debtor.

### 7.6 Delivery of Distributions and Undeliverable or Unclaimed Distributions.

Subject to Bankruptcy Rule 9010, all distributions under the Plan shall be made at the address of each holder of an Allowed Claim as set forth in the books and records of the Debtor or the Reorganized Debtor, as applicable, unless the Debtor or the Reorganized Debtor, as applicable, has been notified in writing of a change of address. If any distribution to the holder of an Allowed Claim is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor or the Reorganized Debtor, as applicable, is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days after the date of the

distribution in question. After such 90th day, and notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary (i) all unclaimed property or interest in property in respect of the distribution in question shall revert to the Reorganized Debtor, and thereafter be distributed Pro Rata to the holders of Allowed Claims in accordance with the terms of this Plan, and (ii) the Claim of any holder with respect to such unclaimed property or interest in property shall be discharged and forever barred.

### 7.7 Means of Payment.

All distributions made pursuant to the Plan shall be in New Common Stock or Cash as indicated.

### 7.8 Setoffs and Recoupment.

The Debtor or the Reorganized Debtor, as applicable, may, but shall not be required to, setoff against or recoup from any Claim any rights to payment that the Estate may have or may have had against the holder of such Claim. Neither the failure of the Debtor or the Reorganized Debtor, as applicable, to setoff or recoup, nor the Allowance of any Claim shall constitute a waiver or release by the Estate or the Reorganized Debtor of any right to payment, or right of setoff or recoupment.

### 7.9 Distributions After Effective Date.

Distributions made pursuant to this Plan after the Effective Date to holders of Disputed Claims that are not Allowed as of the Effective Date, shall be deemed to have been made on the Effective Date. After any such initial distribution, the Reorganized Debtor shall make additional interim distributions to holders of Allowed Claims and Allowed Equity Interests at such time as the Reorganized Debtor may deem appropriate, in accordance with the terms of this Plan.

### 7.10 Withholding and Reporting Requirements.

In connection with this Plan and any instruments issued under this Plan, any party issuing any instrument or making any such distribution under this Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Equity Interest that is entitled to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any applicable tax obligations, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under this Plan to any holder of any Allowed Claim or Allowed Equity Interest has the right, but not the obligation, to not issue such instrument or make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

### 7.11 Time Bar to Distributions.

Any cash distribution issued by the Reorganized Debtor under this Plan shall be null and void if not negotiated within ninety (90) days after the date of issuance. After such 90-day period,

if no request for re-issuance of a voided check was timely made, such amounts shall constitute unclaimed property and be treated in accordance with Section 7.6 of this Plan, and all Claims in respect of such void checks shall be discharged and forever barred.

### 7.12 No Fractional Distributions.

No fractional shares of New Common Stock shall be distributed and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an applicable Allowed Claim or Equity Interest would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded to the next higher whole number. The total number of authorized shares of New Common Stock to be distributed to Holders of Allowed Claims and Interests shall be adjusted as necessary to account for the foregoing rounding.

### 7.13 Minimum Distribution.

No Cash payment of less than $50 or issuance of New Common Stock fewer than one (1) share shall be made to a Holder of an Allowed Claim on account of such Allowed Claim. The total number of authorized shares of New Common Stock to be distributed to Holders of Allowed Claims shall be adjusted as necessary to account for the foregoing minimum distribution threshold.

### 7.14 SEC Exemption.

The New Common Stock is or may be "securities," as defined in Section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws.

All shares of the New Common Stock, including the KIMO Class A Common Stock, the KIMO Class B Common Stock, the KIMO Warrants, the ISH Class A Common Stock, the ISH Class B Common Stock and the ISH Warrants, issued or authorized pursuant to the Plan will be issued in reliance upon section 1145 of the Bankruptcy Code. Pursuant to section 1145 of the Bankruptcy Code, the issuance of (1) the New Common Stock, and (2) any other securities issued in reliance on section 1145 of the Bankruptcy Code, are exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration before the offering, issuance, distribution, or sale of such securities. Each of the foregoing securities (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and (b) is freely tradable and transferable (except as provided in the Unsecured Claims Distribution Trust Documents) by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" of the Reorganized Debtor as defined in Rule 144(a)(1) under the Securities Act and has not been such an "affiliate" within 90 days of such transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

Should the Reorganized Debtor elect on or after the Effective Date to reflect any ownership of the New Common Stock, the Reorganized Debtor need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the New Common Stock under applicable securities laws.

# ARTICLE VIII. PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

### 8.1 Objections to Claims.

Except insofar as a Claim or Equity Interest is Allowed under the Plan or pursuant to Final Order of the Bankruptcy Court, the Debtor or the Reorganized Debtor shall be entitled to object to Claims and Equity Interests, including objections seeking reclassification or subordination of such Claims or Equity Interests. Any objections to Claims or Equity Interests shall be served and filed by the Objection Deadline. Any Claim or Equity Interest as to which an objection is timely filed shall be a Disputed Claim or Equity Interest.

### 8.2 No Distributions Pending Allowance.

If a timely objection is made with respect to any Claim or Equity Interest, no payment or distribution under the Plan shall be made on account of such Disputed Claim or Equity Interest unless and until such Disputed Claim or Equity Interest becomes Allowed.

### 8.3 Distributions After Allowance.

To the extent that a Disputed Claim or Equity Interest ultimately becomes an Allowed Claim or an Allowed Equity Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Equity Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Equity Interest becomes a Final Order, the Reorganized Debtor shall provide to the holder of such Claim or Equity Interest the distribution (if any) to which such holder is entitled under this Plan as of the Effective Date, without any interest.

### 8.4 Disallowance of Late Filed Claims.

Unless otherwise provided in a Final Order of the Bankruptcy Court, any Claim or Equity Interest for which a proof of claim or interest is filed after the applicable Bar Date shall be deemed disallowed. The holder of a Claim or Equity Interest that is disallowed pursuant to this Section 8.4 shall not receive any distribution on account of such Claim or Equity Interest, and neither the Debtor nor the Reorganized Debtor shall need to take any affirmative action for such Claim or Equity Interest to be deemed disallowed.

# ARTICLE IX. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 9.1 Rejection of Contracts and Leases.

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, the Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned or rejected by the Debtor, (ii) previously expired or terminated pursuant to its own terms, or (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtor on or before the

Confirmation Date. The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

### 9.2 Inclusiveness.

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease.

### 9.3 Claims Based on Rejection of Executory Contracts or Unexpired Leases.

All Claims arising out of the rejection of executory contracts and unexpired leases (if any) must be served upon the Debtor or Reorganized Debtor, as applicable, and its counsel within thirty (30) days after the earlier of (i) the date of entry of an order of the Bankruptcy Court approving such rejection or (ii) the Effective Date. Any Claims not filed within such time shall be forever barred from assertion against the Debtor, the Estate, its property and the Reorganized Debtor.

## ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### 10.1 Conditions to Confirmation of Plan.

Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until an order, finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered.

### 10.2 Conditions to Effective Date of Plan.

The Effective Date of the Plan shall not occur until each of the following conditions precedent have been satisfied or waived:

    (a) The clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Case and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto;

    (b) The Confirmation Order shall have become a Final Order; and

    (c) All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered by the parties thereto, and, in each case, all conditions to their effectiveness shall have been satisfied or waived as provided therein.

Within five (5) Business Days of the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date.

### 10.3 Waiver of Conditions Precedent.

Any of the foregoing conditions (with the exception of the conditions set forth in Sections 10.1 and 10.2(a)) may be waived by the Debtor without notice to or order of the Bankruptcy Court. The Debtor may assert a failure to satisfy or waiver of any condition regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right will be deemed an on-going right that may be asserted at any time.

### 10.4 Effect of Failure of Conditions.

If the foregoing conditions have not been satisfied or waived in the manner provided in Sections 10.1, 10.2 and 10.3 hereof, then (i) the Confirmation Order shall be of no further force or effect; (ii) no distributions under the Plan shall be made; (iii) the Estate and all holders of Claims against or Equity Interests in the Debtor shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all of the Estate's obligations with respect to Claims and Equity Interests shall remain unaffected by the Plan; (v) nothing contained in this Plan shall be deemed to constitute a waiver or release of any Claims by or against or Equity Interests by or in the Estate or any other Person or to prejudice in any manner the rights of the Estate or any Person in any further proceedings involving the Debtor or the Estate; and (vi) this Plan shall be deemed withdrawn. Upon such occurrence, the Debtor shall file a written notification with the Bankruptcy Court and serve it on the parties appearing on the service list maintained in the Chapter 11 Case.

### 10.5 Reservation of Rights.

The Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtor with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Estate or any other party with respect to any Claims or Equity Interests or any other matter.

## ARTICLE XI. EFFECT OF CONSUMMATION

### 11.1 Discharge of Claims and Interests in the Debtor.

Upon the Effective Date and in consideration of the distributions to be made under this Plan, except as otherwise provided in this Plan or in the Confirmation Order, each holder (as well as any trustee or agent on behalf of such holder) of a Claim, where such Claim or Interest has been fully paid or otherwise satisfied in accordance with this Plan, and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted under § 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Except as otherwise provided in this Plan, all such holders of Claims, and their affiliates shall be forever precluded and enjoined, pursuant to §§ 105, 525, and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtor or the Reorganized Debtor.

### 11.2    Injunction against Interference with Plan.

Upon the entry of the Confirmation Order, all holders of Claims or Equity Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation of the Plan or the occurrence of the Effective Date.

### 11.3    Exculpation.

Neither the Exculpated Parties nor any of their respective present or former members, managers, officers, directors, employees, equity holders, partners, affiliates, funds, advisors, attorneys or agents, or any of their predecessors, successors or assigns, shall have or incur any liability to any holder of a Claim or Equity Interest or any other party-in-interest, or any of their respective agents, employees, equity holders, partners, members, affiliates, funds, advisors, attorneys or agents, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the administration of the Chapter 11 Case, the negotiation and pursuit of approval of the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, and shall be deemed to have acted in good faith in connection therewith and entitled to the protections of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary contained in this Plan, this Section 11.3 shall not exculpate any party from any liability based upon gross negligence or willful misconduct.

### 11.4    Debtor and Estate Releases

As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, the service of the Released Parties to facilitate the administration of the Estate, a substantial recovery for holders of Allowed Claims, and the implementation of this Plan, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged by the Debtor, the Reorganized Debtor, and the Estate on behalf of themselves and their respective successors, assigns, and representatives and any and all other entities that may purport to assert any cause of action derivatively, by or through the foregoing entities (together, the "***Releasing Parties***"), from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, or liabilities, whatsoever, including any derivative claims, asserted or assertable on behalf of the Releasing Parties, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right, or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Estate, the Chapter 11 Case, the Lender Settlement, the subject matter of, or the loans or other transactions or events giving rise to, any Claim or Equity Interest, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Case, the restructuring transactions, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to this Plan, or any other act or omission,

transaction, agreement, event, or other occurrence, other than claims or causes of action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud, gross negligence, and willful misconduct. Further, the Plan releases all causes of action under Section 547 of the Bankruptcy Code against all Entities.

**11.5    Injunction and Stay.**

(a)    Except as otherwise expressly provided in this Plan, all Persons or entities who have held, hold, or may hold Claims or causes of action against or Equity Interests in the Debtor or any Released Party are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or cause of action against or Equity Interest in the Estate or any entity released, discharged or exculpated hereunder, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Estate with respect to any such Claim, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Estate or against the property held by the Reorganized Debtor (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Estate, or against the property or interests in property of the Estate with respect to any such Claim or Equity Interest, or (v) pursuing any Claim or causes of action released under the Plan.

(b)    Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

(c)    The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, or liabilities released pursuant to this Plan, including, without limitation, the claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities released or exculpated in this Plan.

**11.6    Preservation of Claims.**

(a)    Except as otherwise provided herein, as of the Confirmation Date, pursuant to sections 1123(b)(3)(B) of the Bankruptcy Code, any action, cause of action, claim, liability, obligation, right, suit, debt, sum of money, damage, judgment, Claim, and demand whatsoever, whether known or unknown, at law, in equity, or otherwise, including causes of action under Chapter 5 of the Bankruptcy Code, owned by or otherwise accruing to the Debtor or the Estate shall constitute assets of, and shall immediately be transferred to and vest in, the Reorganized Debtor. Thereafter, the Reorganized Debtor, as a representative of the Debtor and the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, shall have sole and full authority to commence and prosecute any causes of action that may arise for the benefit of the holders of Claims and Equity Interests. Notwithstanding the general

preservation of causes of action under Chapter 5 of the Bankruptcy Code, the Plan releases any and all causes of action under Section 547 of the Bankruptcy Code against all parties.

**11.7     Compromise of Controversies.**

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019 and section 1123(b)(3)(A).

## ARTICLE XII. RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine pending applications for the assumption, assignment or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)     To determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Case and grant or deny any application involving the Debtor or the Estate that may be pending on the Effective Date or that are retained and preserved by the Reorganized Debtor herein;

(c)     To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are effected as provided in the Plan;

(d)     To hear and determine any timely objections to Administrative Expense Claims or to proofs of Claim and Equity Interests, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Disputed Claim or Equity Interest, in whole or in part;

(e)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or maintain the integrity of the Plan following consummation;

(g)     To consider any amendments to or modifications of the Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(h)     To hear and determine all requests for payment of Fee Claims;

(i)      To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the documents that are ancillary to and aid in effectuating the Plan or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)      To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(k)      To hear any other matter not inconsistent with the Bankruptcy Code;

(l)      To hear and determine all disputes involving the existence, scope, and nature of the injunctions, exculpations and releases granted hereunder;

(m)      To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Plan; and

(n)      To enter a final decree(s) closing the Chapter 11 Case.

## ARTICLE XIII. MISCELLANEOUS

### 13.1      Payment of Statutory Fees.

All fees payable under 28 U.S.C. § 1930 shall be paid by the Reorganized Debtor from Distributable Cash on the Effective Date and thereafter, as appropriate.

### 13.2      Filing of Additional Documents.

The Debtor or Reorganized Debtor may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 13.3      Schedules, Exhibits and Plan Supplement Incorporated.

All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if fully set forth herein.

### 13.4      Amendment or Modification of the Plan.

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor or Reorganized Debtor, as applicable, at any time prior to or after the Confirmation Date. Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified; *provided*, *however*, that any holders of Claims and Equity Interests who were deemed to accept the Plan because such Claims and Equity Interests were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims and Equity Interests continue to be unimpaired.

### 13.5 Inconsistency.

In the event of any inconsistency among the Plan, the Disclosure Statement, and any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 13.6 Exemption from Certain Transfer Taxes.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or New Common Stock under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. All sale transactions consummated by the Debtor or the Estate and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including the transfers effectuated under the Plan, the sale by the Debtor of property pursuant to section 363(b) or (f) of the Bankruptcy Code, and the assumption, assignment, and sale by the Estate of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan, and thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 13.7 Expedited Tax Determination.

The Debtor of the Reorganized Debtor, as successor to the Debtor, may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtor for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

### 13.8 Binding Effect.

Except as otherwise provided in section 1141(d) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of this Plan and Confirmation Order shall be binding upon and inure to the benefit of the Debtor, the Estate, the Released Parties, the Releasing Parties, any holder of any Claim or Equity Interest, or any Person named or referred to in this Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, as to the binding effect, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by this Plan and Confirmation Order.

### 13.9 Severability.

If the Bankruptcy Court determines that any provision of this Plan is unenforceable either on its face or as applied to any Claim or Equity Interest, the Debtor may modify this Plan in accordance with Section 13.4 hereof so that such provision shall not be applicable to the holder of such Claim or Equity Interest. Any determination of unenforceability shall not (i) limit or affect

the enforceability and operative effect of any other provisions of this Plan; or (ii) require the re-solicitation of any acceptance or rejection of this Plan unless otherwise ordered by the Bankruptcy Court.

### 13.10    No Payment of Attorneys' Fees.

Except for the fees of Professional Persons, no attorneys' fees shall be paid by the Estate with respect to any Claim or Equity Interest unless otherwise specified in this Plan or a Final Order of the Bankruptcy Court.

### 13.11    Notices.

All notices, requests, and demands to or upon the Estate to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

HAWAIIAN VINTAGE CHOCOLATE COMPANY, INC.
Debtor-in-Possession
4145 Beltline Road
P.O. Box 212-101
Addison, Texas 75001

with a copy to:

WICK PHILLIPS GOULD & MARTIN, LLP
Attention: Jason M. Rudd
3131 McKinney Ave, Suite 500
Dallas, Texas 75204
Telephone: 214-692-6200
jason.rudd@wickphillips.com

### 13.12    Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

**HAWAIIAN VINTAGE CHOCOLATE COMPANY, INC.**

 /s/ James Walsh
By James Walsh, President


**WICK PHILLIPS GOULD & MARTIN, LLP**

 /s/ Jason M. Rudd
Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
Catherine A. Curtis, Tex. Bar No. 24095708
3131 McKinney Ave, Suite 500
Dallas, Texas 75204
Telephone: 214-692-6200
jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com
catherine.curtis@wickphillips.com

**PROPOSED COUNSEL FOR DEBTOR**